UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MALIK ROBINSON,                                    :

              Petitioner,               :          09 Civ. 8222 (GBD) (AJP)

      -against-                         :          **REPORT AND RECOMMENDATION**

SUPERINTENDENT J. T. SMITH,             :

            Respondent.            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable George B. Daniels, United States District Judge:**

        Pro se petitioner Malik Robinson seeks a writ of habeas corpus from his October 28,

2002 conviction in Supreme Court, New York County, for second degree murder, second degree

attempted murder and first degree assault and sentences of twenty-five years to life imprisonment

on the murder count to run consecutively with concurrent fifteen years sentences on the other counts.

(Dkt. No. 1: Pet. ¶¶ 1-5.)

        Robinson's habeas petition asserts that:  (1) the trial court erred in denying his Batson

claim after the prosecutor struck "an [A]frican [A]merican male prospective juror based on the

pretextual reasons that he wanted [a] more [e]ducated [j]ury and was uncomfortable with the

prospective juror['s] demeanor" (Pet. ¶ 12(A)); (2) the trial court deprived Robinson of a fair trial

by including "[c]oercive language in its Allen charge" and "charging the jury to [c]onsider [a]n

[u]nindicted [c]ase theory" (Pet. ¶ 12(B)); (3) the jury's verdict was repugnant because it convicted

2

Robinson of "[a]ssault with a [d]eadly [w]eapon" but acquitted him of weapons possession (Pet. ¶ 12(C)); and (4) Robinson's sentence was excessive (Pet. ¶ 12(D)).

For the reasons set forth below, Robinson's habeas corpus petition should be DENIED.

## FACTS

On the night of August 2, 2000, Malik Robinson shot Victor Rivera and Samuel Vazquez on a Manhattan street, killing Rivera and seriously injuring Vazquez. (Dkt. No. 11: State App'x Ex. A: Robinson 1st Dep't Br. at 10-16; State App'x Ex. B: State 1st Dep't Br. at 1-3.) Robinson was tried in September-October 2002 before Justice Rosalyn Richter and a jury. (Robinson 1st Dep't Br. at 7; State 1st Dep't Br. at 3.)

## Voir Dire

Jury selection started on September 23, 2002, and seven jurors were picked within the first three rounds. (Dkt. No. 8: Voir Dire Transcript ("VD") 1, 226.) During the fourth round, prospective juror Robert Stuckey stated that he was unemployed and that his uncle stabbed someone in "self-defense" seven years ago but was convicted and went to jail. (VD 261, 270-71). While Stuckey expressed his feelings that his uncle was not treated fairly by the court system, he gave assurances that those feelings would not affect him as a juror. (VD 271-72.) Nevertheless, the prosecutor, A.D.A. David Drucker, used a peremptory challenge to remove Stuckey from the jury panel. (VD 302.) By the end of the fourth round ten jurors were selected. (VD 307; Dkt. No. 11: State App'x Ex. A: Robinson 1st Dep't Br. at 4; State App'x Ex. B: State 1st Dep't Br. at 23.)

During the fifth round, prospective juror Vincent Mallard stated that he was single, worked as a stock clerk in a factory and lived with his mother who was a city clerk.  (VD 312, 330.)  In response to the prosecutor's follow-up questions, Mallard stated that the factory manufactured strainers and that he had been going to church lately.  (VD 321.)  Mallard assured defense counsel that he had no issues "serving as a juror in this particular type of case."  (VD 330.)  A.D.A. Drucker used a peremptory challenge to remove Mallard.  (VD 337.)

After the prosecutor used a peremptory challenge to remove a prospective juror that defense counsel thought was African American,[1/] defense counsel raised a <u>Batson</u> claim alleging that the prosecutor "has struck every male black juror eligible to be picked off the last four rounds."  (VD 338-39.)  Reviewing her notes, Justice Richter found that Stuckey and Mallard were the first two African-American males who were eligible for a peremptory challenge as all the others had been "excused for cause."  (VD 339-40.)  The prosecutor argued there was no <u>Batson</u> violation since there were three African American females on the jury and "there's no known category of black males."  (VD 340-41.)  Justice Richter rejected this argument, noting that <u>Batson</u> applied to peremptory challenges based on a combination of gender and race.  (VD 341.)

Justice Richter found that defense counsel had made a prima facie showing of discrimination under <u>Batson</u> and asked the prosecutor if he wanted to "offer race neutral reasons" for the peremptory challenges to Stuckey and Mallard.  (VD 341-42.)  The prosecutor noted that

---

[1/]     Justice Richter spoke with the potential juror, Dennis Martinez, who stated that he was Dominican.  (VD 343.)  Justice Richter ruled that Martinez "doesn't fall in the pattern," and continued the <u>Batson</u> analysis as to the African American venirepersons.  (VD 343.)  After twelve jurors were chosen, the prosecutor, with Robinson's consent, withdrew his peremptory challenge to Martinez, who was seated as alternate number one.  (VD 347-48.)

Stuckey "mentioned his uncle he thought was wrongly convicted, not treated fairly by the court system.  He was unemployed.  He was about an inch away from a cause challenge, frankly."  (VD 342.)

As to Mallard, the prosecutor stated:

> Mr. Mallard was a blue collar worker.  I noticed this jury, which [defense] counsel has taken a big part in, has no white collar jurors.  I am looking for some white collar workers.  Mr. Mallard did not fit that.  That's what I am trying to get. Lived alone with his mother.  I didn't get a good sense of his courtroom demeanor.

(VD 342-43.)[2/]  Defense counsel acknowledged that the prosecutor's basis for challenging Stuckey

---

[2/]  At this point, the ten jurors who had been selected included a "director of promotions for a vitamin company" (VD 58, 73, 100, 108), a former superintendent of a residential building who had been on disability since 1970 (VD 52, 65, 88, 108), a corporate paralegal for a large law firm who had interned for the Legal Aid Society (VD 58-59, 74-75, 101, 108), a co-owner of a café who had previously worked in an advertising firm (VD 59, 76, 108), an accountant for a book store (VD 122, 133, 150), a physical therapist who had recently graduated and was waiting for her exam results before starting her job (VD 177, 194-95, 205-06, 226), a booking agent for a talent management company (VD 182, 212-13, 226), a child-care worker (VD 259, 278-79, 301), a graduate student who was working as a contract administrator for a book publisher (VD 260, 290, 301) and a supervisor in the pension department of the 1199 union (VD 261, 291-92, 302).

Prior to challenging Mallard, the prosecutor had used fourteen peremptory challenges, including challenging a "contract administrator for a children's publishing house" who did paralegal-type work (VD 57, 70, 97, 108), an administrative assistant at the Bank of New York (VD 57, 108), a self-employed "clinical social worker" (VD 118, 124-25, 150), an unemployed advertising copywriter who works freelance (VD 122-23, 150), an account manager for an advertising agency (VD 123, 150), a middle school science teacher (VD 181, 196, 210, 225), an architect (VD 258, 301) and a "graphics researcher" who "find[s] photographs and locate[s] cities on maps" for NBC and had previously worked on the NBC news desk (VD 262, 279-80, 292-93, 302).  The prosecution also used peremptory challenges on three people who were unemployed.  (VD 59, 75, 108; VD 60, 77, 108; VD 259, 278, 301.)  After challenging Mallard, the prosecutor challenged Dennis Martinez who "handle[d] higher education accounts" for JPMorgan Chase by "verifying everything is there when a company sends the checks" and previously worked in construction.  (VD 314, 323, (continued...)

was race neutral, but argued that he "didn't hear anything that was sufficiently race neutral" regarding Mallard.  (VD 343.)

Justice Richter rejected defense counsel's <u>Batson</u> challenge, ruling "these reasons are race neutral and are not a pretextual excuse for race discrimination." (VD 344.)  Specifically, Justice Richter found that:

> Having observed Mr. Mallard, he did seem to be having a little bit of trouble with the questions.  I think the People's description of not getting a good read from him, he was a bit hesitant, a bit reticent.  In a case like this, which may involve multiple counts, the People's wish to have some educational diversity is perfectly understandable, and the challenges stand.

(VD 344.)[3]

---

[2]     (...continued)
338.)  As noted in n.1 above, the prosecutor withdrew this peremptory challenge with defense counsel's consent and Martinez was seated as alternate juror number one.

[3]     After Justice Richter's ruling, the prosecutor made a <u>Batson</u> challenge alleging that defense counsel had "challenged every single white male on this jury" including two potential jurors in the fifth round.  (VD 344-45.)  Defense counsel stated that he had challenged those two prospective jurors because they had "extensive educational backgrounds" and defense counsel wanted a "blue collar jury." (VD 346.)  Indeed, the defense had used peremptories to excuse:  a bankruptcy attorney (VD 53, 66, 108), a Wall Street trader (VD 56, 108), a Merrill Lynch energy trader (VD 59, 108), a computer network engineer (VD 121, 142, 150), a finance analyst (VD 177, 225), another lawyer, a tax litigator (VD 154, 225-26), and an investment banking research analyst (VD 262, 301-02).  Justice Richter ruled that defense counsel's explanation was not pretextual and denied the prosecutor's <u>Batson</u> challenge.  (VD 346-47.)

**The Trial**

On September 25, 2002, Robinson proceeded to a jury trial before Justice Richter. (Dkt. Nos. 7 & 10: Trial Transcript ("Tr.") 1.)[4/]

**The Prosecution Case**

Samuel Vazquez grew up in Spanish Harlem and had been friends with Victor Rivera since junior high school. (Dkt. No. 11: State App'x Ex. A: Robinson 1st Dep't Br. at 7.) Years later, they both moved to Massachusetts and sold drugs together. (Id.) While Rivera was incarcerated from 1994 to early 2000 for selling drugs, Vazquez continued selling drugs on his own and came to New York about every other weekend to visit his family. (Id.)

In late July 2000, Vazquez, Rivera and Jose "Miguel" Merced came to New York. (Robinson 1st Dep't Br. at 8.) On the afternoon of August 2, 2000, Vazquez and Rivera met in New York City and rode their motorcycles around the Bronx and Manhattan while Merced and another friend, Johnny Morales, followed them in a van. (Id.) That evening, the group stopped at 104th Street between Madison and Fifth Avenues at a park in the Carver Projects to talk to another friend. (Robinson 1st Dep't Br. at 9.) The group spent five to fifteen minutes at the park before driving to see Vazquez's girlfriend a few blocks away. (Id.) While at the park, Morales thought he saw Robinson behind a gate at the park entrance. (Id.) Vazquez and Robinson had gotten into a fistfight

---

[4/]     As discussed in sections III-V below, Robinson's habeas claims (other than his Batson claim) are either barred from review by an adequate and independent state procedural ground or not cognizable on federal habeas review. Consequently, as the trial testimony is not relevant to Robinson's habeas claims, this Report and Recommendation will cite to Robinson's First Department brief, not the trial transcript, in summarizing the trial testimony.

a year earlier after Vazquez heard that Robinson had been talking about him.  (Robinson 1st Dep't Br. at 10.)

Around 9:00 or 10:00 p.m., Vazquez and Rivera parked their motorcycles at 104th Street and Lexington Avenue and waited for Merced and Morales who were slowed by a red light. (Robinson 1st Dep't Br. at 9-10.)  As Vazquez talked to his friend Jose "Flo" Diaz, Vazquez heard gunshots and saw Robinson shooting at him from the middle of the street about thirty feet away. (Robinson 1st Dep't Br. at 8, 10.)  Vazquez "put his hand on his stomach and felt blood."  (Robinson 1st Dep't Br. at 10.)  Robinson "looked over" at Rivera who was standing next to Vazquez and shot him once before running towards Park Avenue.  (Id.)  Vazquez and Rivera were not carrying guns. (Id.)

Vazquez fell, got back up and saw Rivera lying on the ground.  (Robinson 1st Dep't Br. at 10-11.)  Vazquez urged Rivera to get up, but Rivera complained that his stomach hurt. (Robinson 1st Dep't Br. at 11.)  As Robinson continued shooting at him, Vazquez started "jogging" to Lexington Avenue and hailed a cab to Mt. Sinai Hospital.  (Robinson 1st Dep't Br. at 11-12.) Vazquez did not call 911 or wait for Merced and Morales to arrive before leaving the scene. (Robinson 1st Dep't Br. at 11.)

Diaz, who had been shot in his left arm by Robinson, ran over to Rivera, grabbed him and told him to hang on.  (Robinson 1st Dep't Br. at 11-13.)  Rivera, however, told Diaz that he "was not going to make it."  (Robinson 1st Dep't Br. at 12.)  While Diaz was holding Rivera, Robinson walked up to Diaz, said "'Flo, just business'" and pulled the trigger, but the gun jammed. (Id.)

After being stuck at a red light, Merced and Morales stopped to talk to Merced's old girlfriend and went to a store at 103d Street and Lexington Avenue to buy a soda.  (Robinson 1st Dep't Br. at 12.)  Morales heard gunshots, left the store and after turning the corner saw "[a] lot of people" running down Lexington Avenue from 104th Street.  (<u>Id.</u>)  When Morales reached 104th Street, he saw Rivera lying on the ground with Diaz next to him.  (Robinson 1st Dep't Br. at 13.)  Morales and Diaz talked to Rivera as he drifted in and out of consciousness.  (<u>Id.</u>)

Police Officers Allen DeLeon and Sean Looney were a few blocks away "when they heard gunshots in the distance."  (Robinson 1st Dep't Br. at 13.)  Officers DeLeon and Looney arrived at the scene, "pushed through the crowd" and saw Rivera laying unconscious against a gate.  (<u>Id.</u>)  Officer Looney asked people in the crowd if they had seen anything, but no one responded.  (Robinson 1st Dep't Br. at 14.)  Officer DeLeon remained at the scene while Officer Looney rode in the ambulance taking Rivera to Metropolitan Hospital.  (<u>Id.</u>)  Rivera, who had been shot twice, died "of a combination of internal bleeding and damage to his diaphragm."  (<u>Id.</u>)

Vazquez had five gunshot wounds and was in critical condition at Mt. Sinai Hospital.  (Robinson 1st Dep't Br. at 15.)  In the operating room, surgeons removed Vazquez's spleen and part of his pancreas and repaired his diaphragm.  (<u>Id.</u>)  Vazquez spent ten days in the hospital, followed by six months of intermittent follow-ups.  (<u>Id.</u>)  Two days after the shooting, Vazquez spoke with Detective Michael Murphy and identified Robinson as the shooter.  (Robinson 1st Dep't Br. at 16.)

Diaz received medical treatment from a friend because he was afraid he would get arrested on an open warrant if he went to the hospital.  (Robinson 1st Dep't Br. at 16.)  When Diaz visited Vazquez in the hospital, Vazquez told him to "shut up and not talk to the police."  (Robinson

1st Dep't Br. at 17.)  Diaz did not speak to the police about the shooting because of his open warrant. (Id.)  A few days after Rivera and Vazquez were shot, Diaz was arrested for an unrelated dispute and spoke to the police about the shooting.  (Id.)  Diaz lied to the police, claiming that the shooting stemmed from a 1988 gambling debt.  (Id.)  Diaz also stated that Vazquez and Robinson had gotten into a fistfight in the 80's, but testified at trial that there was "no bad blood" between Vazquez and Robinson by 2000.  (Robinson 1st Dep't Br. at 18.)

Vazquez and Diaz identified Robinson at trial as the shooter.  (State App'x Ex. B: State 1st Dep't Br. at 19.)

Detective Murphy made numerous attempts to find Robinson, speaking to Robinson's mother and friends, visiting Robinson's last known address, distributing a wanted poster and informing the NYPD Warrant Squad.  (Robinson 1st Dep't Br. at 18.)  Police Officer Elmer Santiago saw the wanted poster in August 2000 and recognized Robinson's face.  (Id.)  A year later, while Officer Santiago was driving in the area of 128th Street and Eighth Avenue, he saw Robinson and arrested him.  (Robinson 1st Dep't Br. at 19.)  Robinson identified himself under a different name and handed over a Florida identification card.  (Id.)  Officer Santiago left Robinson with other officers and went to the precinct to retrieve the wanted poster.  (Id.)  Robinson told the police that he "had been down in Florida for about a year, but that he was up [in New York] visiting his sister." (Id.)  After Officer Santiago returned with the wanted poster, Robinson was taken to the precinct. (Id.)

One of the prosecution's witnesses at trial was Damon Keitt, who classified himself as a "'jailhouse informant.'"  (Robinson 1st Dep't Br. at 20.)  Keitt testified pursuant to a cooperation

agreement with the District Attorney's office.  (Id.)   Keitt met Robinson as they were in the "bullpens going to court," and he asked why Robinson had been arrested.  (Id.)  Robinson told Keitt that he had "shot two people over an old dispute, and that the one he had a dispute with had lived but the other one might have died."  (Id.)  Later that day, Keitt met Robinson again in the "holding pens" in the 100 Centre Street courthouse.  (Robinson 1st Dep't Br. at 21.)  Robinson discussed the shooting incident, telling Keitt that he had started shooting after he saw someone who he had a "dispute" with.  (Id.)  Robinson also stated that one of his shots had grazed a man named "Fluff" who was not involved in the dispute.  (Id.)

**Jury Charge**

The prosecutor requested a "transferred intent charge," arguing that Robinson committed murder by either intending to kill Rivera and killing him or intending to kill Vazquez, but killing Rivera instead.  (Dkt. No. 7: Tr. 772-73, 776-78.)  Justice Richter expressed two concerns with the prosecutor's position:  (1) the indictment stated that Robinson "intended to cause the death of another person but actually caused Mr. Rivera's death," implying that it did not include the theory that Rivera was the intended target; and (2) the requested charge would create two different theories for one charged crime.  (Tr. 776-77.)

The prosecutor responded that the indictment's language only required that Robinson intend to kill "a person," not "a person other than Mr. Rivera."  (Tr. 777.)  As to Justice Richter's second concern, the prosecutor explained that, while his theory was that Robinson was trying to kill both of them, the jury only needed "to find he was trying to kill one of them, trying to kill a person."

(Tr. 777.)  Defense counsel argued that the prosecutor "can't have it both ways," and requested a "specific intent charge."  (Tr. 778.)

Justice Richter expressed concern that, by giving both specific and transferred intent charges to one murder count, some jurors might convict based on one theory while others might convict on the other theory.  (Tr. 779-80.)  The prosecutor argued that the jurors did not need to be unanimous on the theory of intent as long they all agreed that Robinson intended to kill someone. (Tr. 780.)

Later that day, Justice Richter informed the parties that, while she did not find any cases directly on point, she had found a few cases suggesting that the prosecutor could argue both specific and transferred intent for a single count.  (Tr. 787-89.)  Justice Richter allowed the prosecutor to argue both theories on summation, but gave defense counsel an opportunity to do more research before the jury was charged.  (Tr. 788-89.)

During summation, the prosecutor argued that he did not have to prove who Robinson intended to kill:

> We have to prove that [Robinson] intended to cause death.  We don't have to prove who he intended to kill.  We don't have to prove the person he intended to kill was the person he actually killed, Victor Rivera.  In fact, our main theory, it's clear from the evidence, is he was trying to kill Sammy Vazquez, and in trying to kill Sammy, he killed Victor.  He may have been also trying to kill Victor.  There's some evidence he took a shot at Victor. . . . Was he intending to kill Victor also?  He may well have been.  Clearly he was trying to kill Sammy.  That's our main theory.

(Tr. 879-80.)

Justice Richter's charge on the second degree murder count instructed the jury that "it is not required that the person who dies be the same person whose death was intended to be

caused." (Charge: Tr. 924.)  Justice Richter further instructed that, in order to convict Robinson for murder, the jury was required to find that he "caused the death of Victor Rivera, and . . . that he did so with the intent to cause the death of Victor Rivera, or Sammy Vazquez, or both of them." (Charge: Tr. 924.)  After conferring with the attorneys, Justice Richter gave additional instructions where, inter alia, she reiterated:  "As I told you, for the Murder count . . . [Robinson] must have had the intent to cause the death of either Victor Rivera or Sammy Vazquez or both of them."  (Charge: Tr. 933-34.)  Defense counsel did not object to Justice Richter's jury charge or her supplemental instructions.  (See Charge: Tr. 935-36.)

### Jury Deliberations and Verdict

On October 4, 2002, after about a day of deliberations, the jury sent a note indicating that they were "stuck" and could not "come to a unanimous decision."  (Tr. 969.)   In response, Justice Richter gave the jury an Allen charge instructing, inter alia:

> Each of you has a right and an obligation to vote your conscience and view the evidence however you wish.  I'm not asking anyone to give in or to surrender their conscientious belief of what the verdict should be.  But what I am asking is for you to open up your minds, open up that conversation in the jury room, and try to figure out, consistent with your conscience, whether there is a possibility that the jury can come to a unanimous verdict on any of the counts or all of the counts.
>
> This is a dialogue, and each of you should be voicing your opinion.  You don't have to explain your position, no juror has any obligation to explain their position, but you do need to identify what the sticking points are and be talking about them to see if there is a way, consistent with your conscience, to resolve them.

(Tr. 971-72.)  Defense counsel did not object to Justice Richter's Allen charge.  (See Tr. 970, 972-73.)

Later that day, the jury reached a verdict convicting Robinson of the second degree murder of Rivera, as well as second degree attempted murder and first degree assault for the shooting of Vazquez.  (Tr. 975-81.)  The jury, however, acquitted Robinson of second degree attempted murder and second degree assault relating to Diaz, and also found Robinson not guilty of second degree criminal possession of a weapon.  (Tr. 976-81.)

At a bench conference, defense counsel argued that, since there was only evidence of one gun being used, the verdict acquitting Robinson of weapons possession but convicting him of murder, attempted murder, and assault was repugnant.  (Tr. 981.)  Justice Richter rejected defense counsel's repugnancy argument, noting that, "as charged to the jury," the murder and assault counts did not require "that there be a loaded and operable firearm."  (Tr. 982-83, 986.)

**Sentence**

At sentencing on October 28, 2002, Robinson was adjudicated a second violent felony offender based on his 1998 conviction for third degree criminal possession of a weapon. (Dkt. No. 7: 10/28/02 Sentencing ("S.") 2-3.)  The prosecutor asked for consecutive maximum sentences citing Robinson's violent background and the fact the his actions were premeditated and endangered bystanders on the street.  (S. 4-6.)  Defense counsel asked Justice Richter to "consider a mid range sentence" of twenty years to life and to impose concurrent sentences because of Robinson's young age and his lack of an extensive violent criminal history. (S. 7-11.)  Additionally, defense counsel noted that the victims were not innocent bystanders, but drug dealers.  (S. 7, 9.) Defense counsel further argued that the jury's verdict acquitted Robinson of possessing a gun and attempting to kill or injure Diaz, demonstrating that the "jury had some trouble with the whole

scenario that was presented by the District Attorney." (S. 7-8.) Defense counsel again argued that the verdict was repugnant, but that the issue "will be dealt with in the appellate process." (S. 8, 11.)

Justice Richter noted that "[t]his is not a single shot case where Mr. Robinson . . . got unlucky and hurt someone," and that there were "points when [Robinson] could have stopped shooting." (S. 14.) Even if Rivera and Vazquez "were doing more than they described" and really selling drugs, it did not give Robinson "a right to pull out a gun on the street in the middle of New York and shoot anyone." (Id.)

After noting that Robinson's prior conviction involved a loaded gun, Justice Richter found that Robinson's "continued use of guns on the street when there are some other ways to solve[] even the most difficult of interpersonal dispute[] suggests . . . that [Robinson] is a serious risk to the community in which he resides." (S. 15.) Justice Richter further noted that Robinson's criminal "record was way too long for someone of his age," but his youth and strong family ties mitigated against consecutive maximum sentences. (S. 13-14.) Justice Richter sentenced Robinson to twenty-five years to life imprisonment for Rivera's murder, consecutive to concurrent fifteen year sentences for the attempted murder and assault of Vazquez. (S. 12-13, 15.)

**Robinson's Direct Appeal**

Represented by the Center for Appellate Litigation, Robinson appealed to the First Department, arguing: (1) "the prosecutor unlawfully discriminated during jury selection by striking a black male prospective juror based on the pretextual reasons that he wanted a more educated jury and was uncomfortable with the prospective juror's demeanor" (Dkt. No. 11: State App'x Ex. A: Robinson 1st Dep't Br. at 28-37; State App'x Ex. C: Robinson 1st Dep't Reply Br. at 4-7); (2) Justice

Richter deprived Robinson of a fair trial by "including coercive language in [her] Allen charge"[5]/ and "charging the jury to consider an unindicted case theory" (Robinson 1st Dep't Br. at 37-50); (3) the jury's verdict was repugnant in that it found Robinson guilty of "assault with a deadly weapon" but acquitted him of weapons possession (id. at 50-55); and (4) Robinson's sentence was excessive and should be reduced "in the interest of justice" (id. at 56-58).

On May 6, 2008, the First Department unanimously affirmed Robinson's conviction, holding:

> The court properly denied [Robinson's] application pursuant to Batson v. Kentucky.  The record supports the court's finding that the prosecutor's stated nondiscriminatory reasons for challenging the panelist at issue, relating to both demeanor and employment, were not pretextual, and this finding is entitled to great deference.  When the prosecutor cited the panelist's demeanor, the court, employing its unique opportunity to make such observations, immediately recognized what aspect of that demeanor the prosecutor was referring to, confirmed that this concern was legitimate, and concluded that the prosecutor credibly relied on demeanor in exercising a strike.  As for the employment-related reason, which the court also accepted, the record sufficiently explains an alleged disparity in the prosecutor's pattern of challenges.
>
> Since the verdict convicting [Robinson] of assault in the first degree and acquitting him of criminal possession of a weapon in the second degree was not repugnant, the court properly denied his request to resubmit the case to the jury.
>
> [Robinson's] challenges to the court's main and supplemental charges are unpreserved and we decline to review them in the interest of justice.  As an alternative holding, we also reject them on the merits.
>
> . . . .

---

[5]/    Specifically, Robinson argued that Justice Richter shifted the burden of proof and "potentially" coerced jurors when she instructed them that "no juror has any obligation to explain their position, but you do need to identify what the sticking points are and be talking about them."  (Id. at 37-42.)

We perceive no basis for reducing the sentence.

People v. Robinson, 51 A.D.3d 460, 460-61, 857 N.Y.S.2d 119, 120-21 (1st Dep't 2008) (citations & quotation omitted).

On September 10, 2008, the New York Court of Appeals denied leave to appeal. People v. Robinson, 11 N.Y.3d 794, 866 N.Y.S.2d 620 (2008).

### Robinson's Habeas Petition

On September 7, 2009, Robinson filed his pro se federal habeas corpus petition arguing that: (1) Justice Richter erred in denying his Batson claim after the prosecutor struck "an [A]fican [A]merican male prospective juror based on the pretextual reasons that he wanted [a] more [e]ducated [j]ury and was uncomfortable with the prospective juror['] s demeanor" (Dkt. No. 1: Pet. ¶ 12(A)); (2) Justice Richter deprived Robinson of a fair trial by including "[c]oercive language in [her] Allen charge" and "charging the jury to [c]onsider [a]n [u]nindicted [c]ase theory (Pet. ¶ 12(B)); (3) the jury's verdict was repugnant because it convicted Robinson of "[a]ssault with a [d]eadly [w]eapon" but acquitted him of weapons possession (Pet. ¶ 12(C)); and (4) Robinson's sentence was excessive (Pet. ¶ 12(D)).

## ANALYSIS

### I.   THE AEDPA REVIEW STANDARD

Before the Court can determine whether petitioner is entitled to federal habeas relief, the Court must address the proper habeas corpus review standard under the Antiterrorism and Effective Death Penalty Act ("AEDPA").

In enacting the AEDPA, Congress significantly "modifie[d] the role of federal habeas courts in reviewing petitions filed by state prisoners." Williams v. Taylor, 529 U.S. 362, 403, 120 S. Ct. 1495, 1518 (2000).  The AEDPA imposed a more stringent review standard, as follows:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).[6]

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have "independent meaning." Williams v. Taylor, 529 U.S. at 404-05, 120 S. Ct. at 1519.[7]  Both, however, "restrict[] the source of clearly established law to [the Supreme] Court's jurisprudence."

---

[6]  See also, e.g., Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011); Knowles v. Mirzayance, 129 S. Ct. 1411, 1418 (2009); Henry v. Poole, 409 F.3d 48, 67 (2d Cir. 2005), cert. denied, 547 U.S. 1040, 126 S. Ct. 1622 (2006); Portalatin v. Graham, 624 F.3d 69, 78-79 (2d Cir. 2010) (en banc), cert. denied, 131 S. Ct. 1693 (2011);  Howard v. Walker, 406 F.3d 114, 121-22 (2d Cir. 2005); Cox v. Donnelly, 387 F.3d 193, 197 (2d Cir. 2004); Dallio v. Spitzer, 343 F.3d 553, 559-60 (2d Cir. 2003), cert. denied, 541 U.S. 961, 124 S. Ct. 1713 (2004); Eze v. Senkowski, 321 F.3d 110, 120 (2d Cir. 2003) ("AEDPA changed the landscape of federal habeas corpus review by 'significantly curtail[ing] the power of federal courts to grant the habeas petitions of state prisoners.'" (quoting Lainfiesta v. Artuz, 253 F.3d 151, 155 (2d Cir. 2001), cert. denied, 535 U.S. 1019, 122 S. Ct. 1611 (2002))).

[7]  Accord, e.g., Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir.), cert. denied, 540 U.S. 1091, 124 S. Ct. 962 (2003); Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000); Lurie v. Wittner, 228 F.3d 113, 125 (2d Cir. 2000), cert. denied, 532 U.S. 943, 121 S. Ct. 1404 (2001); Clark v. Stinson, 214 F.3d 315, 320 (2d Cir. 2000), cert. denied, 531 U.S. 1116, 121 S. Ct. 865 (2001).

Williams v. Taylor, 529 U.S. at 412, 120 S. Ct. at 1523.[8/]  "That federal law, as defined by the Supreme Court, may be either a generalized standard enunciated in the [Supreme] Court's case law or a bright-line rule designed to effectuate such a standard in a particular context."  Kennaugh v. Miller, 289 F.3d at 42; accord, e.g., Davis v. Grant, 532 F.3d 132, 140 (2d Cir. 2008), cert. denied, 129 S. Ct. 1312 (2009).  "A petitioner can not win habeas relief solely by demonstrating that the state court unreasonably applied Second Circuit precedent."  Yung v. Walker, 341 F.3d at 110; accord, e.g., DelValle v. Armstrong, 306 F.3d at 1200.

As to the "contrary to" clause:

A state-court decision will certainly be contrary to [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases. . . .  A state-court decision will also be contrary to [the Supreme] Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the

---

[8/]     Accord, e.g., Georgison v. Donelli, 588 F.3d 145, 153-54 (2d Cir. 2009); Dunlap v. Burge, 583 F.3d 160, 164 (2d Cir.), cert. denied, 130 S. Ct. 642 (2009); Carey v. Musladin, 549 U.S. 70, 77, 127 S. Ct. 649, 654 (2006) ("Given the lack of holdings from this Court regarding [this issue], it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"); Yarborough v. Alvarado, 541 U.S. 652, 661, 124 S. Ct. 2140, 2147 (2004) ("We look for 'the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'"); Wiggins v. Smith, 539 U.S. 510, 519, 123 S. Ct. 2527, 2534 (2003); Lockyer v. Andrade, 538 U.S. 63, 71, 123 S. Ct. 1166, 1172 (2003) ("Section 2254(d)(1)'s 'clearly established' phrase 'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'"); Portalatin v. Graham, 624 F.3d at 79 ("To qualify as 'clearly established' for the purposes of federal habeas review, a rule of law must be embodied in the 'holdings, as opposed to the dicta,' of Supreme Court precedent."); Hargett v. Giambruno, 291 F. App'x 402, 403 (2d Cir. 2008); Howard v. Walker, 406 F.3d at 122; Tueros v. Greiner, 343 F.3d 587, 591 (2d Cir. 2003), cert. denied, 541 U.S. 1047, 124 S. Ct. 2171 (2004); Parsad v. Greiner, 337 F.3d at 181; DelValle v. Armstrong, 306 F.3d 1197, 1200 (2d Cir. 2002); Yung v. Walker, 341 F.3d 104, 109-10 (2d Cir. 2003); Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir.), cert. denied, 537 U.S. 909, 123 S. Ct. 251 (2002); Loliscio v. Goord, 263 F.3d 178, 184 (2d Cir. 2001); Sellan v. Kuhlman, 261 F.3d 303, 309 (2d Cir. 2001).

Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.

<u>Williams</u> v. <u>Taylor</u>, 529 U.S. at 405-06, 120 S. Ct. at 1519-20.[9/]

In <u>Williams</u>, the Supreme Court explained that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Williams</u> v. <u>Taylor</u>, 529 U.S. at 413, 120 S. Ct. at 1523.[10/]  However, "[t]he term 'unreasonable' is . . . difficult to define." <u>Williams</u> v. <u>Taylor</u>, 529 U.S. at 410, 120 S. Ct. at 1522.  The Supreme Court made clear that "an <u>unreasonable</u> application of federal law is different

---

[9/]  <u>Accord</u>, <u>e.g.</u>, <u>Knowles</u> v. <u>Mirzayance</u>, 129 S. Ct. at 1419 (The Supreme "Court has held on numerous occasions that it is not 'an unreasonable application of clearly established federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this [Supreme] Court." (quotation omitted)); <u>Brown</u> v. <u>Payton</u>, 544 U.S. 133, 141, 125 S. Ct. 1432, 1438-39 (2005); <u>Bell</u> v. <u>Cone</u>, 543 U.S. 447, 452-53, 125 S. Ct. 847, 851 (2005); <u>Price</u> v. <u>Vincent</u>, 538 U.S. 634, 640, 123 S. Ct. 1848, 1853 (2003); <u>Lockyer</u> v. <u>Andrade</u>, 538 U.S. at 73-74, 123 S. Ct. at 1173-74; <u>Portalatin</u> v. <u>Graham</u>, 624 F.3d at 79; <u>Bierenbaum</u> v. <u>Graham</u>, 607 F.3d 36, 47-48 (2d Cir. 2010), <u>cert. denied</u>, 131 S. Ct. 1693 (2011); <u>Ortiz</u> v. <u>N.Y.S. Parole in Bronx, N.Y.</u>, 586 F.3d 149, 156 (2d Cir. 2009), <u>cert. denied</u>, 131 S. Ct. 320 (2010); <u>Dunlap</u> v. <u>Burge</u>, 583 F.3d at 164; <u>Davis</u> v. <u>Grant</u>, 532 F.3d at 140; <u>Hawkins</u> v. <u>Costello</u>, 460 F.3d 238, 242 (2d Cir. 2006), <u>cert. denied</u>, 549 U.S. 1215, 127 S. Ct. 1267 (2007); <u>Henry</u> v. <u>Poole</u>, 409 F.3d at 68; <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122; <u>Rosa</u> v. <u>McCray</u>, 396 F.3d 210, 219 (2d Cir.), <u>cert. denied</u>, 546 U.S. 889, 126 S. Ct. 215 (2005); <u>Tueros</u> v. <u>Greiner</u>, 343 F.3d at 591; <u>DelValle</u> v. <u>Armstrong</u>, 306 F.3d at 1200; <u>Yung</u> v. <u>Walker</u>, 341 F.3d at 109; <u>Kennaugh</u> v. <u>Miller</u>, 289 F.3d at 42; <u>Loliscio</u> v. <u>Goord</u>, 263 F.3d at 184; <u>Lurie</u> v. <u>Wittner</u>, 228 F.3d at 127-28.

[10/]  <u>Accord</u>, <u>e.g.</u>, <u>Cullen</u> v. <u>Pinholster</u>, 131 S. Ct. at 1399; <u>Waddington</u> v. <u>Sarausad</u>, 555 U.S. 179, 129 S. Ct. 823, 831 (2009); <u>Brown</u> v. <u>Payton</u>, 544 U.S. at 141, 125 S. Ct. at 1439; <u>Wiggins</u> v. <u>Smith</u>, 539 U.S. at 520, 123 S. Ct. at 2534-35; <u>Bierenbaum</u> v. <u>Graham</u>, 607 F.3d at 48; <u>Brisco</u> v. <u>Ercole</u>, 565 F.3d 80, 87 (2d Cir.), <u>cert. denied</u>, 130 S. Ct. 739 (2009); <u>Jones</u> v. <u>West</u>, 555 F.3d 90, 96 (2d Cir. 2009); <u>Davis</u> v. <u>Grant</u>, 532 F.3d at 140; <u>Lynn</u> v. <u>Bliden</u>, 443 F.3d 238, 246 (2d Cir. 2006), <u>cert. denied</u>, 549 U.S. 1257, 127 S. Ct. 1383 (2007); <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122; <u>Parsad</u> v. <u>Greiner</u>, 337 F.3d at 181.

from an <u>incorrect</u> application of federal law."  <u>Id.</u><u>11/</u>  Rather, the issue is "whether the state court's

application of clearly established federal law was objectively unreasonable."  <u>Williams</u> v. <u>Taylor</u>,

529 U.S. at 409, 120 S. Ct. at 1521.<u>12/</u>  "Objectively unreasonable" is different from "clear error."

<u>Lockyer</u> v. <u>Andrade</u>, 538 U.S. at 75, 123 S. Ct. at 1175 ("The gloss of clear error fails to give proper

deference to state courts by conflating error (even clear error) with unreasonableness.").  This is a

"'substantially higher threshold'" than incorrectness.  <u>Renico</u> v. <u>Lett</u>, 130 S. Ct. at 1862; <u>accord, e.g.,</u>

---

<u>11/</u>    See also, <u>e.g.</u>, <u>Renico</u> v. <u>Lett</u>, 130 S. Ct. 1855, 1862 (2010); <u>Waddington</u> v. <u>Sarausad</u>, 129 S. Ct. at 831; <u>Yarborough</u> v. <u>Alvarado</u>, 541 U.S. at 664, 124 S. Ct. at 2150; <u>Wiggins</u> v. <u>Smith</u>, 539 U.S. at 520, 123 S. Ct. at 2535; <u>Price</u> v. <u>Vincent</u>, 538 U.S. at 641, 123 S. Ct. at 1853 ("As we have explained: '[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" (quoting <u>Woodford</u> v. <u>Visciotti</u>, 537 U.S. 19, 24-25, 123 S. Ct. 357, 360 (2002))); <u>Lockyer</u> v. <u>Andrade</u>, 538 U.S. at 75, 123 S. Ct. at 1175; <u>Dunlap</u> v. <u>Burge</u>, 583 F.3d at 165-66 (A "federal court might agree with a petitioner that the relevant federal law should have been interpreted differently than the way it was interpreted by the state court yet still conclude that the state court's application of the federal law was not unreasonable."); <u>Brisco</u> v. <u>Ercole</u>, 565 F.3d at 87-88; <u>Jones</u> v. <u>West</u>, 555 F.3d at 96; <u>Davis</u> v. <u>Grant</u>, 532 F.3d at 140; <u>Hawkins</u> v. <u>Costello</u>, 460 F.3d at 243; <u>Lynn</u> v. <u>Bliden</u>, 443 F.3d at 246; <u>Henry</u> v. <u>Poole</u>, 409 F.3d at 68; <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122; <u>Rosa</u> v. <u>McCray</u>, 396 F.3d at 219; <u>Cox</u> v. <u>Donnelly</u>, 387 F.3d at 197; <u>Eze</u> v. <u>Senkowski</u>, 321 F.3d at 124-25; <u>DelValle</u> v. <u>Armstrong</u>, 306 F.3d at 1200 ("With regard to issues of law, therefore, if the state court's decision was not an unreasonable application of, or contrary to, clearly established federal law as defined by Section 2254(d), we may not grant habeas relief even if in our judgment its application was erroneous.").

<u>12/</u>    Accord, <u>e.g.</u>, <u>Yarborough</u> v. <u>Alvarado</u>, 541 U.S. at 664, 124 S. Ct. at 2150; <u>Wiggins</u> v. <u>Smith</u>, 539 U.S. at 520-21, 123 S. Ct. at 2535; <u>Price</u> v. <u>Vincent</u>, 538 U.S. at 641, 123 S. Ct. at 1853; <u>Lockyer</u> v. <u>Andrade</u>, 538 U.S. at 75, 123 S. Ct. at 1174-75; <u>Woodford</u> v. <u>Visciotti</u>, 537 U.S. at 25-27, 123 S. Ct. at 360-61; <u>Portalatin</u> v. <u>Graham</u>, 624 F.3d at 79; <u>Dunlap</u> v. <u>Burge</u>, 583 F.3d at 165; <u>Davis</u> v. <u>Grant</u>, 532 F.3d at 140; <u>Mosby</u> v. <u>Senkowski</u>, 470 F.3d 515, 519 (2d Cir. 2006), <u>cert. denied</u>, 552 U.S. 836, 128 S. Ct. 75 (2007); <u>Hawkins</u> v. <u>Costello</u>, 460 F.3d at 243; <u>Lynn</u> v. <u>Bliden</u>, 443 F.3d at 246; <u>Henry</u> v. <u>Poole</u>, 409 F.3d at 68; <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122; <u>Cox</u> v. <u>Donnelly</u>, 387 F.3d at 197; <u>Eze</u> v. <u>Senkowski</u>, 321 F.3d at 125; <u>Ryan</u> v. <u>Miller</u>, 303 F.3d 231, 245 (2d Cir. 2002); <u>Loliscio</u> v. <u>Goord</u>, 263 F.3d at 184; <u>Lurie</u> v. <u>Wittner</u>, 228 F.3d at 128-29.

Knowles v. Mirzayance, 129 S. Ct. at 1420.[13/]   Federal habeas relief is precluded "so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011). "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings.'" Cullen v. Pinholster, 131 S. Ct. at 1398 (citations omitted).

"[T]he range of reasonable judgment can depend in part on the nature of the relevant rule." Yarborough v. Alvarado, 541 U.S. at 664, 124 S. Ct. at 2149.[14/]   "Even if the state court issued

---

[13/]   However, the Second Circuit has explained "that while '[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.'" Jones v. Stinson, 229 F.3d at 119 (quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000)); accord, e.g., Brisco v. Ercole, 565 F.3d at 88; Jones v. West, 555 F.3d at 96; Brown v. Alexander, 543 F.3d 94, 100 (2d Cir. 2008) ("[W]e have observed that the 'unreasonable application' standard 'falls somewhere between merely erroneous and unreasonable to all reasonable jurists.'"); Davis v. Grant, 532 F.3d at 140; Lynn v. Bliden, 443 F.3d at 246; Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d at 219; Cox v. Donnelly, 387 F.3d at 197, 200-01; Yung v. Walker, 341 F.3d at 110; Eze v. Senkowski, 321 F.3d at 125; Ryan v. Miller, 303 F.3d at 245; Loliscio v. Goord, 263 F.3d at 184.

[14/]   The Supreme Court explained:

> [T]he range of reasonable judgment can depend in part on the nature of the relevant rule.  If a legal rule is specific, the range may be narrow.  Applications of the rule may be plainly correct or incorrect.  Other rules are more general, and their meaning must emerge in application over the course of time.  Applying a general standard to a specific case can demand a substantial element of judgment.  As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

Yarborough v. Alvarado, 541 U.S. at 664, 124 S. Ct. at 2149; accord, e.g., Harrington v. Richter, 131 S. Ct. at 786; Renico v. Lett, 130 S. Ct. at 1864; Knowles v. Mirzayance, 129 S. Ct. at 1420 (Where the Supreme Court "standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."); Portalatin v. Graham, 624 F.3d at 79; Ortiz v. N.Y.S. Parole in Bronx, N.Y., 586 F.3d at 157; (continued...)

a decision 'contrary to' clearly established Supreme Court law, a petitioner 'cannot obtain relief . . . unless application of a <u>correct</u> interpretation of that [Supreme Court] decision leads to the conclusion that his rights were violated.'" <u>Cousin</u> v. <u>Bennett</u>, 511 F.3d 334, 339 (2d Cir.), <u>cert. denied</u>, 553 U.S. 1096, 128 S. Ct. 2910 (2008) (citation omitted).

Moreover, the Second Circuit has held "that a state court determination is reviewable under AEDPA if the state decision unreasonably failed to extend a clearly established, Supreme Court defined, legal principle to situations which that principle should have, in reason, governed." <u>Kennaugh</u> v. <u>Miller</u>, 289 F.3d at 45.[15/]

Under the AEDPA, in short, the federal courts "must give the state court's adjudication a high degree of deference." <u>Yung</u> v. <u>Walker</u>, 341 F.3d at 109; <u>accord, e.g.,</u> <u>Cullen</u> v. <u>Pinholster</u>, 131 S. Ct. at 1398; <u>Felkner</u> v. <u>Jackson</u>, 131 S. Ct. 1305, 1307 (2011) (per curiam) ("On federal habeas review, AEDPA 'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'" (citations omitted)); <u>Renico</u> v. <u>Lett</u>, 130 S. Ct. at 1862; <u>Bell</u> v. <u>Cone</u>, 543 U.S. at 455, 125 S. Ct. at 853;

---

[14/]     (...continued)
Dunlap v. Burge, 583 F.3d at 166; Hawkins v. Costello, 460 F.3d at 243.

[15/]     Accord, e.g., Bierenbaum v. Graham, 607 F.3d at 47-48; Davis v. Grant, 532 F.3d at 140-41; Tueros v. Greiner, 343 F.3d at 591; Yung v. Walker, 341 F.3d at 109; see Yarborough v. Alvarado, 541 U.S. at 665-66, 124 S. Ct. at 2150-51 ("The petitioner contends that if a habeas court must extend a rationale before it can apply to the facts at hand then the rationale cannot be clearly established at the time of the state-court decision. There is force to this argument. Section 2254(d)(1) would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law. At the same time, the difference between applying a rule and extending it is not always clear. Certain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt." (citations omitted)).

Mosby v. Senkowski, 470 F.3d at 519.  "[I]t is the petitioner's burden to demonstrate that the state

court applied the relevant clearly established law to th[e] record in an unreasonable manner."

Acosta v. Artuz, 575 F.3d 177, 184 (2d Cir. 2009); accord, e.g., Cullen v. Pinholster, 131 S. Ct. at

1398 ("The petitioner carries the burden of proof."); Georgison v. Donelli, 588 F.3d at 154.  As the

Supreme Court explained:

> If this standard is difficult to meet, that is because it was meant to be. . . .
> [§ 2254(d)] preserves authority to issue the writ in cases where there is no possibility
> fairminded jurists could disagree that the state court's decisions conflict with [the
> Supreme] Court's precedents.  It goes no further. . . . As a condition for obtaining
> habeas corpus from a federal court, a state prisoner must show that the state court's
> ruling on the claim being presented in federal court was so lacking in justification
> that there was an error well understood and comprehended in existing law beyond
> any possibility for fairminded disagreement.

Harrington v. Richter, 131 S. Ct. at 786-87.

Even where the state court decision does not specifically refer to either the federal

claim or to relevant federal case law, the deferential AEDPA review standard applies.

> Determining whether a state court's decision resulted from an unreasonable
> legal or factual conclusion does not require that there be an opinion from the state
> court explaining the state court's reasoning.  And as this Court has observed, a state
> court need not cite or even be aware of [Supreme Court] cases under § 2254(d).
> Where a state court's decision is unaccompanied by an explanation, the habeas
> petitioner's burden still must be met by showing there was no reasonable basis for
> the state court to deny relief.

Harrington v. Richter, 131 S. Ct. at 784 (citations to Sellan v. Kuhlman, 261 F.3d at 312, & other

cases omitted); accord, e.g., Cullen v. Pinholster, 131 S. Ct. at 1402; Bell v. Cone, 543 U.S. at 455,

125 S. Ct. at 853; Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365 (2002) (State court not required

to cite Supreme Court cases, or even be aware of them, to be entitled to AEDPA deference, "so long

as neither the reasoning nor the result of the state-court decision contradicts them."); Wilson v.

Mazzuca, 570 F.3d 490, 499 (2d Cir. 2009) ("Where, as here, 'a state court fails to articulate the rationale underlying its rejection of a petitioner's claim, and when that rejection is on the merits, the federal court will focus its review on whether the state court's ultimate decision was an unreasonable application of clearly established Supreme Court precedent.'").[16/]  "'[A] habeas court must determine what arguments or theories . . . could have supporte[d] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court.'" Cullen v. Pinholster, 131 S. Ct. at 1402.

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington v. Richter, 131 S. Ct. at 784-85.

"[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 131 S. Ct. at 1398.

---

[16/]    See also, e.g., Wade v. Herbert, 391 F.3d 135, 140, 142 (2d Cir. 2004) (Appellate Division held claim was "'without merit.'"  "Such a summary determination, even absent citation of federal case law, is a determination 'on the merits' and as such requires the deference specified by § 2254."  Moreover, "[i]f any reasonable ground was available [for the state court's decision], we must assume the [state] court relied on it."); Francolino v. Kuhlman, 365 F.3d 137, 141 (2d Cir.) (Where "the Appellate Division concluded its opinion by stating that it had 'considered and rejected defendants' remaining claims,'" AEDPA deference applies.), cert. denied, 543 U.S. 872, 125 S. Ct. 110 (2004); Jenkins v. Artuz, 294 F.3d 284, 291 (2d Cir. 2002) ("In Sellan, we found that an even more concise Appellate Division disposition-the word 'denied'-triggered AEDPA deference.").

Finally, in appropriate circumstances, "[i]f [the] court finds that the state court engaged in an unreasonable application of established law, resulting in constitutional error, it must next consider whether such error was harmless." Howard v. Walker, 406 F.3d at 122.

In addition to the standard of review of legal issues, the AEDPA provides a deferential review standard for state court factual determinations: "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); accord, e.g., Bierenbaum v. Graham, 607 F.3d at 48; Lynn v. Bliden, 443 F.3d at 246-47; Rosa v. McCray, 396 F.3d at 220. "The petitioner bears the burden of 'rebutting the presumption of correctness by clear and convincing evidence.'" Parsad v. Greiner, 337 F.3d at 181 (quoting § 2254(e)(1)); accord, e.g., Bierenbaum v. Graham, 607 F.3d at 48 ("A state court's determination of a factual issue is presumed to be correct, and may only be rebutted by clear and convincing evidence."); Brown v. Alexander, 543 F.3d at 100; Lynn v. Bliden, 443 F.3d at 246-47.

## II.   THE STATE COURT'S BATSON RULING WAS NOT AN UNREASONABLE APPLICATION OF SUPREME COURT PRECEDENT

### A.   Batson v. Kentucky and Its Progeny

In Batson v. Kentucky, 476 U.S. 79, 84, 106 S. Ct. 1712, 1716 (1986), the Supreme Court reaffirmed that a state's purposeful exclusion of jurors based on race violates the Equal Protection Clause of the Constitution. For AEDPA purposes, "[t]he clearly established Supreme Court precedent applicable in this case is Batson v. Kentucky . . . ." Overton v. Newton, 295 F.3d 270, 276 (2d Cir. 2002).[17]

---

[17]   See also, e.g., Anderson v. Superintendent of the Elmira Corr. Facility, No. 05-1586, 2008
(continued...)

As the Second Circuit reiterated, "[t]he Supreme Court has set forth a three-part test trial courts are to employ when evaluating whether a party exercised a peremptory challenge in a discriminatory manner." Galarza v. Keane, 252 F.3d 630, 635 (2d Cir. 2001).  The Second Circuit has summarized that test as follows:

> [Step 1:]  First, a trial court must decide whether the party challenging the strike has made a prima facie showing that the circumstances give rise to an inference that a member of the venire was struck because of his or her race. Such a prima facie case may be established, for example, by showing a pattern of strikes against minority prospective jurors. . . .

> [Step 2:]  If the party making the Batson challenge establishes a prima facie case, the trial court must require the non-moving party to proffer a race-neutral explanation for striking the potential juror.  The second step does not require the party to give an explanation that is persuasive or even plausible.

> [Step 3:]  Finally, if the non-moving party proffers a race-neutral explanation, the trial court must determine whether the moving party has carried his or her burden of proving that the strike was motivated by purposeful discrimination.

Galarza v. Keane, 252 F.3d at 636 (citations omitted); see, e.g., Snyder v. Louisiana, 552 U.S. 472, 476-77, 128 S. Ct. 1203, 1207 (2008); Rice v. Collins, 546 U.S. 333, 338, 126 S. Ct. 969, 973-74 (2006); Johnson v. California, 545 U.S. 162, 168, 125 S. Ct. 2410, 2416 (2005); Miller-El v. Dretke, 545 U.S. 231, 239, 125 S. Ct. 2317, 2324-25 (2005); Miller-El v. Cockrell, 537 U.S. 322, 123 S. Ct. 1029, 1035 (2003); Purkett v. Elem, 514 U.S. 765, 767, 115 S. Ct. 1769, 1770-71 (1995); Hernandez v. New York, 500 U.S. 352, 358-59, 111 S. Ct. 1859, 1865-66 (1991); Batson v. Kentucky, 476 U.S.

---

17/ (...continued)
 WL 162842 at *2 (2d Cir. Jan. 18, 2008), cert. denied, 553 U.S. 1084, 128 S. Ct. 2882 (2008); Cousin v. Bennett, 511 F.3d 334, 339 (2d Cir. 2008); Majid v. Portuondo, 428 F.3d 112, 125 (2d Cir. 2005), cert. denied, 549 U.S. 863, 127 S. Ct. 151 (2006); Delvalle v. Herbert, 129 F. App'x 646, 649 (2d Cir. 2005); Harris v. Kuhlmann, 346 F.3d 330, 342-43 (2d Cir. 2003).

at 96-98, 106 S. Ct. at 1723-24; McKinney v. Artuz, 326 F.3d 87, 97-98 (2d Cir. 2003); Overton v. Newton, 295 F.3d at 276; Jordan v. Lefevre, 206 F.3d 196, 200 (2d Cir. 2000).[18]

       In a footnote in Batson, the Supreme Court emphasized the deference to be accorded to the trial judge's determination: "Since the trial judge's findings in the context under consideration here largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference." Batson v. Kentucky, 476 U.S. at 98 n.21, 106 S. Ct. at 1724 n.21; accord, e.g., Felkner v. Jackson, 131 S. Ct. 1305, 1307 (2011) (per curiam) ("The trial court's [Batson] determination is entitled to 'great deference,' and 'must be sustained unless it is clearly erroneous.'" (citations omitted)); Owens v. Portuondo, 98 Civ. 6559, 1999 WL 378343 at *9 (S.D.N.Y. June 9, 1999) (Peck, M.J.), aff'd, 205 F.3d 1324 (2d Cir. 2000).  Moreover, while that "is the standard on direct review[, o]n federal habeas review, AEDPA 'imposes a highly deferential standard for

---

[18]     See also, e.g., United States v. Farhane, 634 F.3d 127, 154-55 (2d Cir. 2011); Dolphy v. Mantello, 552 F.3d 236, 238-39 (2d Cir. 2009); Cousin v. Bennett, 511 F.3d at 337-38 (reiterates Batson three-steps, and notes that "Batson forbids the exclusion of even one juror on the basis of race.  Thus, a 'pattern' of discriminatory exclusions is not required for a prima facie showing . . ."[] (citations omitted)); Richardson v. Greene, 497 F.3d 212, 214 (2d Cir. 2007); Sorto v. Herbert, 497 F.3d 163, 169-70 (2d Cir. 2007); Messiah v. Duncan, 435 F.3d 186, 194-95 (2d Cir. 2006); Majid v. Portuondo, 428 F.3d at 126; Green v. Travis, 414 F.3d 288, 295 n.2 (2d Cir. 2005); Walker v. Girdich, 410 F.3d 120, 123 (2d Cir. 2005); DeBerry v. Portuondo, 403 F.3d 57, 59 (2d Cir.), cert. denied, 546 U.S. 884, 126 S. Ct. 225 (2005); Rodriguez v. Schriver, 392 F.3d 505, 510 n.8 (2d Cir. 2004); United States v. Brown, 352 F.3d 654, 660 (2d Cir. 2003); Harris v. Kuhlmann, 346 F.3d at 343; United States v. Thomas, 320 F.3d 315, 316-17 (2d Cir. 2003); Overton v. Newton, 295 F.3d at 276; Jordan v. Lefevre, 293 F.3d 587, 590 (2d Cir. 2002); United States v. Raysor, 9 F. App'x 33, 34 (2d Cir. 2001), cert. denied, 537 U.S. 922, 123 S. Ct. 314 & 537 U.S. 1012, 123 S. Ct. 482 (2002); Moore v. Walker, No. 99-2754, 234 F.3d 1262 (table), 2000 WL 1721120 at *1 (2d Cir. Nov. 16, 2000).

evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'" <u>Felkner</u> v. <u>Jackson</u>, 131 S. Ct. at 1307.

       The Second Circuit has held that a <u>Batson</u> claim "is a structural error that is not subject to harmless error review." <u>Tankleff</u> v. <u>Senkowski</u>, 135 F.3d 235, 248 (2d Cir. 1998); <u>accord</u>, <u>e.g.</u>, <u>Galarza</u> v. <u>Keane</u>, 252 F.3d at 638 n.8.[19]

---

[19]    <u>See</u>, <u>e.g.</u>, <u>Isaac</u> v. <u>Greiner</u>, 01 Civ. 2178, 2005 WL 1713036 at *3 n.1 (S.D.N.Y. July 19, 2005), <u>aff'd</u>, 205 F. App'x 873 (2d Cir. 2006); <u>Curry</u> v. <u>Burge</u>, 03 Civ. 0901, 2004 WL 2601681 at *33 (S.D.N.Y. Nov. 17, 2004) (Peck, M.J.), <u>report & rec. adopted</u>, 2005 WL 106490 (S.D.N.Y. Jan. 19, 2005) & 2007 WL 4098115 (S.D.N.Y. Nov. 16, 2007); <u>Reyes</u> v. <u>Greiner</u>, 340 F. Supp. 2d 245, 263 (E.D.N.Y. 2004), <u>aff'd</u>, 150 F. App'x 77 (2d Cir. 2005), <u>cert. denied</u>, 546 U.S. 1107, 126 S. Ct. 1056 (2006); <u>Rodriguez</u> v. <u>Senkowski</u>, 03 Civ. 3314, 2004 WL 503451 at *31 & n.42 (S.D.N.Y. Mar. 15, 2004) (Peck, M.J.); <u>Besser</u> v. <u>Walsh</u>, 02 Civ. 6775, 2003 WL 22093477 at *26 & n.59 (S.D.N.Y. Sept. 10, 2003) (Peck, M.J.), <u>report & rec. adopted</u>, 2003 WL 22846044 (S.D.N.Y. Dec. 2, 2003); <u>Dobbin</u> v. <u>Greiner</u>, 249 F. Supp. 2d 241, 249 (S.D.N.Y. 2002).

       Other Circuits that addressed the issue have reached the same result. <u>See</u>, <u>e.g.</u>, <u>Williams</u> v. <u>Woodford</u>, 396 F.3d 1059, 1069 (9th Cir.), <u>cert. denied</u>, 546 U.S. 934, 126 S. Ct. 419 (2005); <u>Carter</u> v. <u>Kemna</u>, 255 F.3d 589, 591 (8th Cir. 2001), <u>cert. denied</u>, 534 U.S. 1085, 122 S. Ct. 822 (2002); <u>United States</u> v. <u>Harris</u>, 192 F.3d 580, 588 (6th Cir. 1999); <u>United States</u> v. <u>McFerron</u>, 163 F.3d 952, 955-56 (6th Cir. 1998) (suggestion that <u>Batson</u> error can be considered harmless error "has been resoundingly rejected by every circuit court that has considered the issue" (citing cases)); <u>Turner</u> v. <u>Marshall</u>, 121 F.3d 1248, 1254 n.3 (9th Cir. 1997), <u>cert. denied</u>, 522 U.S. 1153, 118 S. Ct. 1178 (1998), <u>overruled to a limited extent on other grounds</u>, <u>Tolbert</u> v. <u>Page</u>, 182 F.3d 677, 685 (9th Cir. 1999); <u>Ford</u> v. <u>Norris</u>, 67 F.3d 162, 170 (8th Cir. 1995) ("In any event, we agree . . . that constitutional error involving racial discrimination in jury selection is not subject to harmless error analysis."); <u>Scarpa</u> v. <u>DuBois</u>, 38 F.3d 1,14 (1st Cir. 1994), <u>cert. denied</u>, 513 U.S. 1129, 115 S. Ct. 940 (1995); <u>United States ex el. Pruitt</u> v. <u>Page</u>, No. 97 C 2115, 1999 WL 652035 at *8-9 (N.D. Ill. Aug. 20, 1999) ("It is the consensus of Courts of Appeals, including the Seventh Circuit, that <u>Batson</u> error is structural and cannot be harmless."), <u>aff'd</u>, 337 F.3d 921 (7th Cir. 2003), <u>cert. denied</u>, 540 U.S. 1122, 124 S. Ct. 1081 (2004).

**B.      Application of Batson to Robinson's Habeas Claim[20]**

In his petition, Robinson asserts that Justice Richter erred in denying his Batson claim after the prosecutor struck "an [A]frican [A]merican male prospective juror based on the pretextual reasons that he wanted [a] more [e]ducated [j]ury and was uncomfortable with the prospective juror['s] demeanor."  (Dkt. No. 1: Pet. ¶ 12(A).)  While failing to elaborate in his habeas petition, Robinson's First Department brief argued that the prosecutor's "educated jury" rationale was pretextual as the prosecutor had previously used several peremptory challenges "to remove prospective jurors with jobs suggesting substantial education."  (Dkt. No. 11: State App'x Ex. A: Robinson 1st Dep't Br. at 28.)  Furthermore, according to Robinson, while the prosecutor "had asked several prospective jurors about their jobs, he had not asked any about their educational backgrounds."  (Robinson 1st Dep't Br. at 28.)

---

[20]    Because both Justice Richter and the First Department correctly recognized the issue as one of Batson's application (see pages 3-5, 15 above), the AEDPA "unreasonable application" standard applies.  See, e.g., Cousin v. Bennett, 511 F.3d 334, 337 (2d Cir. 2008); McKinney v. Artuz, 326 F.3d 87, 98 (2d Cir. 2003); Overton v. Newton, 295 F.3d 270, 275-80 (2d Cir. 2002); Wells v. Ricks, 07 Civ. 6982. 2008 WL 506294 at *17 n.22 (S.D.N.Y. Feb. 26, 2008) (Peck, M.J.), report & rec. adopted, 2008 WL 2986503 (S.D.N.Y. Aug. 1, 2008); Rodriguez v. Senkowski, 03 Civ. 3314, 2004 WL 503451 at *30 n.43 (S.D.N.Y. Mar. 15, 2004) (Peck, M.J.); Besser v. Walsh, 02 Civ. 6775, 2003 WL 22093477 at *26 n.60 (S.D.N.Y. Sept. 10, 2003) (Peck, M.J.), report & rec. adopted, 2003 WL 22846044 (S.D.N.Y. Dec. 2, 2003); Rodriguez v. Lord, 00 Civ. 0402, 2001 WL 1223864 at *18 & nn.43-44 (S.D.N.Y. Oct. 15, 2001) (Peck, M.J.) (& cases cited therein), report & rec. adopted, 2004 WL 2149116 (S.D.N.Y. Sept. 22, 2004) (Daniels, D.J.); see also cases cited at page 19 & n.10 above.  The AEDPA standard of review of the state trial judge's factual determinations about the Batson issues is even more circumscribed and deferential.  See e.g., Miller-El v. Cockrell, 537 U.S. 322, 339, 123 S. Ct. 1029, 1040-41 (2003) ("[A] state court's finding of the absence of discriminatory intent [at the third Batson step] is 'a pure issue of fact' accorded significant deference." (quoting Hernandez v. New York, 500 U.S. 352, 365, 111 S. Ct. 1859, 1869 (1991)); see also cases cited on pages 40-41, 49 below.

As to demeanor, Robinson argued that the prosecutor's claim that "he simply did not get a good sense of Mallard[] is exactly the type of non-reason that courts have long criticized." (Robinson 1st Dep't Br. at 33.)  Robinson further argued that the demeanor claim was pretextual because the prosecutor "never explored the issue by questioning Mallard" to see if Mallard's "purported reticence was merely discomfort speaking in court."  (Robinson 1st Dep't Br. at 33-35.)

The First Department rejected Robinson's <u>Batson</u> claim:

> The court properly denied [Robinson's] application pursuant to <u>Batson</u> v. <u>Kentucky</u>.  The record supports the court's finding that the prosecutor's stated nondiscriminatory reasons for challenging the panelist at issue, relating to both demeanor and employment, were not pretextual, and this finding is entitled to great deference.  When the prosecutor cited the panelist's demeanor, the court, employing its unique opportunity to make such observations, immediately recognized what aspect of that demeanor the prosecutor was referring to, confirmed that this concern was legitimate, and concluded that the prosecutor credibly relied on demeanor in exercising a strike.  As for the employment-related reason, which the court also accepted, the record sufficiently explains an alleged disparity in the prosecutor's pattern of challenges.

<u>People</u> v. <u>Robinson</u>, 51 A.D.3d 460, 460, 857 N.Y.S.2d 119, 120 (1st Dep't) (citations & quotation omitted), <u>appeal denied</u>, 11 N.Y.3d 794, 866 N.Y.S.2d 620 (2008).

1.    **Batson's Step One**

During voir dire, Robinson made a <u>Batson</u> challenge, and Justice Richter directed the prosecutor to state his reasons for challenging Stuckey and Mallard.  (<u>See</u> page 3 above.)  After hearing the prosecutor's reasons for the challenges, Justice Richter determined that the reasons were not pretextual, and denied the <u>Batson</u> motion.  (<u>See</u> page 5 above.)

Since Justice Richter ruled on Robinson's <u>Batson</u> claim, this Court need not determine whether Robinson established a prima facie showing of intentional racial discrimination,

i.e., satisfied step one of the Batson test, as that issue is moot.  See, e.g., Hernandez v. New York,
500 U.S. 352, 359, 111 S. Ct. 1859, 1866 (1991) ("Once a [non-moving party] has offered a race-
neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate
question of intentional discrimination, the preliminary issue of whether the [moving party] had made
a prima facie showing becomes moot."); United States v. Hill, 279 F. App'x 90, 92 (2d Cir.)
("Because the trial court, although it was not required to, found that the prosecution provided
non-pretextual race-neutral reasons for the strikes we need not decide whether these statistics
amount to a prima facie showing of discriminatory intent."), cert. denied, 129 S. Ct. 330 (2008);
United States v. Brown, 352 F.3d 654, 660 (2d Cir. 2003);  McKinney v. Artuz, 326 F.3d 87, 98 (2d
Cir. 2003) ("The Supreme Court has held that the prima facie case of discriminatory intent becomes
irrelevant to the analysis of a peremptory challenge once the trial court proceeds to the second and
third steps as it did here."); Galarza v. Keane, 252 F.3d 630, 639 (2d Cir. 2001); United States v.
Franklyn, 157 F.3d 90, 97 (2d Cir. 1998), cert. denied, 525 U.S. 1112, 119 S. Ct. 887 (1999).[21/]

---

[21/]     See also, e.g., Afrika v. Conway, No. 06-CV-0280, 2011 WL 582618 at *11 (W.D.N.Y.
Feb. 9, 2011); Alston v. Phillips, 703 F. Supp. 2d 150, 174 (E.D.N.Y. 2010); Machicote v.
Ercole, 06 Civ. 13320, 2008 WL 169348 at *11 (S.D.N.Y. Jan. 18, 2008); Dotson v. Ercole,
06 Civ. 7823, 2007 WL 1982730 at *5 (S.D.N.Y. July 10, 2007), report & rec. adopted, 2009
WL 1615997 (S.D.N.Y. June 9, 2009); Welch v. Artus, No. 04-CV-205S, 2007 WL 949652
at *57 (W.D.N.Y. Mar. 29, 2007); Huggins v. Girdick, No. 03-CV-3248, 2007 WL 433397
at *10 n.7 (E.D.N.Y. Feb. 7, 2007); Valentine v. New York, 04 Civ. 1411, 2006 WL
2135779 at *4 (S.D.N.Y. Aug. 1, 2006), aff'd, 252 F. App'x 388 (2d Cir. 2007); Lewis v.
Bennett, 435 F. Supp. 2d 184, 190 (W.D.N.Y. 2006); Funches v. Walsh, 05 Civ. 2839, 2006
WL 1063287 at *6 n.12 (S.D.N.Y. Apr. 21, 2006), aff'd, 264 F. App'x 45 (2d Cir.), cert.
denied, 553 U.S. 1022, 128 S. Ct. 2087 (2008); Rose v. Senkowski, No. 99 CV 6053, 2005
WL 4655394 at *12 (E.D.N.Y. July 25, 2005), report & rec. adopted, 2006 WL 1720445
(E.D.N.Y. June 22, 2006); Isaac v. Greiner, 01 Civ. 2178, 2005 WL 1713036 at *6
(S.D.N.Y. July 19, 2005), aff'd, 205 F. App'x 873 (2d Cir. 2006); Swift v. Goord, 02 Civ.
(continued...)

### 2.   **Batson's Step Two**

The second step of the <u>Batson</u> analysis – that the non-moving party (here, the prosecution) come forward with a race-neutral explanation for its peremptory challenge – "does not demand an explanation that is persuasive, or even plausible.  'At this [second] step of the inquiry, the issue is the facial validity of the [non-movant's] explanation.  Unless a discriminatory intent is inherent in the [non-movant's] explanation, the reason offered will be deemed race neutral.'"  <u>Purkett</u> v. <u>Elem</u>, 514 U.S. 765, 768, 115 S. Ct. 1769, 1771 (1995).[22/]  The Supreme Court has clarified that:

> It is not until the third step that the persuasiveness of the justification becomes relevant–the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination.  At that stage, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination.  But to say that a trial judge may choose to disbelieve

---

[21/]    (...continued)
3448, 2004 WL 2434966 at *4 (S.D.N.Y. Nov. 1, 2004); <u>Francis</u> v. <u>Duncan</u>, 03 Civ. 4959, 2004 WL 1878796 at *14 (S.D.N.Y. Aug. 23, 2004) (Chin, D.J.); <u>Rodriguez</u> v. <u>Senkowski</u>, 03 Civ. 3314, 2004 WL 503451 at *32 (S.D.N.Y. Mar. 15, 2004) (Peck, M.J.); <u>Besser</u> v. <u>Walsh</u>, 02 Civ. 6775, 2003 WL 22093477 at *26 (S.D.N.Y. Sept. 10, 2003) (Peck, M.J.), <u>report & rec. adopted</u>, 2003 WL 22846044 (S.D.N.Y. Dec. 2, 2003); <u>Baker</u> v. <u>Bennett</u>, 235 F. Supp. 2d 298, 307 n.12 (S.D.N.Y. 2002); <u>Durant</u> v. <u>Strack</u>, 151 F. Supp. 2d 226, 236-42 (E.D.N.Y. 2001); <u>Owens</u> v. <u>Portuondo</u>, 98 Civ. 6559, 1999 WL 378343 at *9 (S.D.N.Y. June 9, 1999) (Peck, M.J.), <u>aff'd</u>, 205 F.3d 1324 (2d Cir. 2000); <u>United States</u> v. <u>Moore</u>, 4 F. Supp. 2d 319, 321 (S.D.N.Y. 1998).

[22/]    <u>Accord</u>, <u>e.g.</u>, <u>Rice</u> v. <u>Collins</u>, 546 U.S. 333, 338, 126 S. Ct. 969, 974 (2006); <u>United States</u> v. <u>Martinez</u>, 621 F.3d 101, 109 (2d Cir. 2010), <u>cert. denied</u>, 131 S. Ct. 1622 (2011); <u>United States</u> v. <u>Douglas</u>, 525 F.3d 225, 238 (2d Cir.), <u>cert. denied</u>, 129 S. Ct. 619 (2008); <u>Green</u> v. <u>Travis</u>, 414 F.3d 288, 301 (2d Cir. 2005); <u>Overton</u> v. <u>Newton</u>, 295 F.3d 270, 276 (2d Cir. 2002); <u>Blalock</u> v. <u>Fisher</u>, 04 Civ. 2252, 2010 WL 2891185 at *3 (S.D.N.Y. July 12, 2010); <u>Christian</u> v. <u>Artus</u>, 04 Civ. 10174, 2006 WL 2463432 at *6 (S.D.N.Y. Aug. 23, 2006); <u>Besser</u> v. <u>Walsh</u>, 02 Civ. 6775, 2003 WL 22093477 at *26 (S.D.N.Y. Sept. 10, 2003) (Peck, M.J.), <u>report & rec. adopted</u>, 2003 WL 22846044 (S.D.N.Y. Dec. 2, 2003); <u>Owens</u> v. <u>Portuondo</u>, 98 Civ. 6559, 1999 WL 378343 at *9 (S.D.N.Y. June 9, 1999) (Peck, M.J.), <u>aff'd</u>, 205 F.3d 1324 (2d Cir. 2000); <u>see also</u>, <u>e.g.</u>, <u>People</u> v. <u>Payne</u>, 88 N.Y.2d 172, 183, 643 N.Y.S.2d 949, 956 (1996).

> a silly or superstitious reason at step 3 is quite different from saying that a trial judge must terminate the inquiry at step 2 when the race-neutral reason is silly or superstitious. The latter violates the principle that the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike.
>
> The Court of Appeals appears to have seized on our admonition in Batson that to rebut a prima facie case, the proponent of a strike "must give a 'clear and reasonably specific' explanation of his 'legitimate reasons' for exercising the challenges" and that the reason must be "related to the particular case to be tried." This warning was meant to refute the notion that the [non-movant] could satisfy his burden of production by merely denying that he had a discriminatory motive or by merely affirming his good faith. What it means by a "legitimate reason" is not a reason that makes sense, but a reason that does not deny equal protection.

Purkett v. Elem, 514 U.S. at 768-69, 115 S. Ct. at 1771 (citations omitted).[23]

Nevertheless, as the Second Circuit has stated, "[i]t is rare that a Batson violation occurs where a prosecutor fails to put forth an adequate explanation at step two. As the Supreme Court has made clear, because the burden of persuasion always rests with the opponent of the strike, 'even if the State produces only a frivolous or utterly nonsensical justification for its strike, the case does not end - it merely proceeds to step three.'" Richardson v. Greene, 497 F.3d 212, 219 (2d Cir. 2007) (quoting Johnson v. California, 545 U.S. 162, 171, 125 S. Ct. 2410, 2417 (2005)).

The prosecutor here explained that he struck Mallard because:

> Mr. Mallard was a blue collar worker. I noticed this jury, which [defense] counsel has taken a big part in, has no white collar jurors. I am looking for some white collar workers. Mr. Mallard did not fit that. That's what I am trying to get. Lived alone with his mother. I didn't get a good sense of his courtroom demeanor.

---

[23] Accord, e.g., Jordan v. Lefevre, 206 F.3d 196, 200 (2d Cir. 2000) ("Batson analysis recognizes that a race neutral reason may be rational and yet be a pretext for discrimination.").

(See page 4 above.)  As there is no inherent discriminatory intent in the prosecutor's explanations, this Court deems his reasons race neutral and proceeds to the third Batson step.  E.g., Purkett v. Elem, 514 U.S. at 768, 115 S. Ct. at 1771 ("'Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.'"); Blalock v. Fisher, 2010 WL 2891185 at *3; Francis v. Duncan, 03 Civ. 4959, 2004 WL 1878796 at *14 (S.D.N.Y. Aug. 23, 2004) (Chin, D.J.) ("At step two, the non-moving party's burden is extremely low:  Although a race-neutral explanation must be given, it does not have to be persuasive or even plausible, but merely facially valid.  Furthermore, unless the proffered reason is inherently discriminatory, it will be deemed race neutral."); Rodriguez v. Senkowski, 03 Civ. 3314, 2004 WL 503451 at *33 (S.D.N.Y. Mar. 15, 2004) (Peck, M.J.) ("Since the prosecution offered facially neutral explanations, thus satisfying the second Batson step, the Court will now review the trial court's determination that the defense did not prove purposeful racial discrimination at the third Batson step.").

### 3.    Batson's Step Three

Step three of the Batson analysis requires that the totality of circumstances be considered.  United States v. Alvarado, 951 F.2d 22, 26 (2d Cir. 1991) ("As with most inquiries into state of mind, the ultimate determination depends on an aggregate assessment of all the circumstances."); accord, e.g., United States v. Martinez, 621 F.3d 101, 109 (2d Cir. 2010) (Addressing Batson's third step:  "[I]f a valid reason is articulated, the trial court considers the totality of the circumstances to determine whether the objecting party has carried its burden of proving purposeful discrimination by a preponderance of the evidence."), cert. denied, 131 S. Ct. 1622 (2011); United States v. Thomas, 303 F.3d 138, 144 (2d Cir. 2002); Galarza v. Keane, 252

F.3d 630, 636 (2d Cir. 2001); Jordan v. Lefevre, 206 F.3d 196, 200 (2d Cir. 2000) ("[T]he third step

of the Batson inquiry requires a trial judge to make 'an ultimate determination on the issue of

discriminatory intent based on all the facts and circumstances.'"); United States v. Alvarado, 923

F.2d 253, 256 (2d Cir. 1991) (remanding for "an ultimate determination on the issue of

discriminatory intent based on all the facts and circumstances").[24]

> As the Supreme Court has instructed:
>
> [T]he critical question in determining whether a prisoner has proved purposeful
> discrimination at step three is the persuasiveness of the prosecutor's justification for
> his peremptory strike. At this stage, "implausible or fantastic justifications may (and
> probably will) be found to be pretexts for purposeful discrimination." In that
> instance the issue comes down to whether the trial court finds the prosecutor's race-
> neutral explanations to be credible. Credibility can be measured by, among other
> factors, the prosecutor's demeanor; by how reasonable, or how improbable, the
> explanations are; and by whether the proffered rationale has some basis in accepted
> trial strategy.

Miller-El v. Cockrell, 537 U.S. 322, 338, 123 S. Ct. 1029, 1040 (2003) (citation omitted); see also,

e.g., McKinney v. Artuz, 326 F.3d 87, 98 (2d Cir. 2003) ("Thus, [i]n the typical peremptory

challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a

peremptory challenge should be believed. Because the evidence on this issue is often vague or

ambiguous, the best evidence often will be the demeanor of the attorney who exercises the

---

[24]   See, e.g., Rodriguez v. Senkowski, 03 Civ. 3314, 2004 WL 503451 at *37 (S.D.N.Y.
Mar. 15, 2004) (Peck, M.J.); Besser v. Walsh, 02 Civ. 6775, 2003 WL 22093477 at *29
(S.D.N.Y. Sept. 10, 2003) (Peck, M.J.), report & rec. adopted, 2003 WL 22846044
(S.D.N.Y. Dec. 2, 2003); United States v. Franklyn, 96 Cr.1062, 1997 WL 334969 at *5
(S.D.N.Y. June 16, 1997), aff'd, 157 F.3d 90 (2d Cir.), cert. denied, 525 U.S. 1027, 119
S. Ct. 563 (1998); DeBerry v. Portuondo, 277 F. Supp. 2d 150, 157 (E.D.N.Y. 2003), aff'd,
403 F.3d 57 (2d Cir.), cert. denied, 546 U.S. 884, 126 S. Ct. 225 (2005); Haywood v.
Portuondo, 288 F. Supp. 2d 446, 460 (S.D.N.Y. 2003); Frazier v. New York, 187 F. Supp.
2d 102, 114 (S.D.N.Y. 2002), aff'd, 156 F. App'x 423 (2d Cir. 2005).

challenge.  Thus, evaluation of the [striking attorney's] state of mind based on [his or her] demeanor and credibility lies peculiarly within a trial judge's province." (quotations & citations omitted, brackets in original)).

        The Court reiterates that on habeas review, it must give "great deference" to the trial court's findings as to the third Batson step.  See, e.g., 28 U.S.C. §§ 2254(d)(2) & (e); Felkner v. Jackson, 131 S. Ct. 1305, 1307 (2011) (per curiam); Purkett v. Elem, 514 U.S. 765, 769, 115 S. Ct. 1769, 1771 (1995); Hernandez v. New York, 500 U.S. 352, 364-65, 111 S. Ct. 1859, 1868-69 (1991); Batson v. Kentucky, 476 U.S. 79, 98 n.21, 106 S. Ct. 1712, 1724, n.21 (1986); McKinney v. Artuz, 326 F.3d at 100-01; Bryant v. Speckard, 131 F.3d 1076, 1077 (2d Cir. 1997) ("A state court's determination whether a prosecutor's use of a peremptory challenge was motivated by discriminatory intent, in violation of Batson, is a factual determination and thus qualifies for [former § 2254(d)'s] presumption of correctness."), cert. denied, 524 U.S. 907, 118 S. Ct. 2066 (1998); Brown v. Kelly, 973 F.2d 116, 120, 122 (2d Cir. 1992) (the trial court's "decision on the factual question of discriminatory animus, largely based on determinations of credibility, is ordinarily given 'great deference' on appeal" and habeas review), cert. denied, 506 U.S. 1084, 113 S. Ct. 1060 (1993).[25/]  Moreover, "deference is especially appropriate where a trial judge has made a finding that

---

[25/]    See also, e.g., United States v. Alvarado, 951 F.2d at 25 ("As we have recognized, the task of assessing the prosecutor's explanations, in order to determine the ultimate issue of whether discrimination has been shown, falls primarily upon the judicial officer conducting the jury selection, whose determinations as to credibility of the proffered explanations are entitled to 'appropriate deference.'"); Besser v. Walsh, 2003 WL 22093477 at *27; Durant v. Strack, 151 F. Supp. 2d 226, 235-36 (E.D.N.Y. 2001) ("Because the trial judge is uniquely situated to assess the striking attorney's state of mind based on credibility and demeanor, . . . 'a reviewing court ordinarily should give those findings great deference.'").

an attorney credibly relied on demeanor in exercising a strike." <u>Snyder</u> v. <u>Louisiana</u>, 552 U.S. 472, 479, 128 S. Ct. 1203, 1209 (2008).

### A.    **Demeanor**

One of the reasons the prosecutor struck Mallard was because of Mallard's demeanor during jury selection.  (<u>See</u> page 4 above.)  As an initial matter, the Second Circuit has accepted demeanor as a valid, race-neutral basis for a peremptory challenge:

> An impression of the conduct and demeanor of a prospective juror during the voir dire may provide a legitimate basis for the exercise of a peremptory challenge.  The fact that a prosecutor's explanations in the face of a <u>Batson</u> inquiry are founded on these impressions does not make them unacceptable if they are sufficiently specific to provide a basis upon which to evaluate their legitimacy.

<u>Brown</u> v. <u>Kelly</u>, 973 F.2d 116, 121 (2d Cir. 1992) (upholding peremptory challenges based on prosecutor's perception of one juror's "timidity" and "nervousness," another juror's "flippant" answers and flirtatious manner with defense counsel, and a third juror's hostility and unresponsiveness), <u>cert. denied</u>, 506 U.S. 1084, 113 S. Ct. 1060 (1993); <u>see also</u>, <u>e.g.</u>, <u>United States</u> v. <u>White</u>, 552 F.3d 240, 252 (2d Cir. 2009) ("[T]he government's concern about a juror's inattentiveness or angry demeanor constitutes an acceptable reason for the exercise of a peremptory challenge."); <u>Messiah</u> v. <u>Duncan</u>, 435 F.3d 186, 200-01 (2d Cir. 2006) (upholding peremptory challenge due partially to juror's "inattentiveness during voir dire - he was reported to be reading the newspaper"); <u>Green</u> v. <u>Travis</u>, 414 F.3d 288, 300 (2d Cir. 2005) ("[T]he unfavorable demeanor of a venireperson has been held to be a race-neutral explanation for a peremptory challenge." (citing cases)); <u>Moore</u> v. <u>Walker</u>, No. 99-2754, 234 F.3d 1262 (table), 2000 WL 1721120 at *2 (2d Cir. Nov. 16, 2000) (upholding as race-neutral peremptory challenges based on "inattentiveness" and

"demeanor"); Bryant v. Speckard, 131 F.3d 1076, 1077-78 (2d Cir. 1997) (upholding peremptory challenges based on juror's "discomfort and apprehension"); McCrory v. Henderson, 82 F.3d 1243, 1247-48 (2d Cir. 1996) (Peremptory challenge "decisions may legitimately be based not only on answers given by the prospective juror to questions posed on voir dire, but also on the prosecutor's observations of the prospective juror."); United States v. Rudas, 905 F.2d 38, 41 (2d Cir. 1990) (juror's inattentiveness); United States v. Ruiz, 894 F.2d 501, 506 (2d Cir. 1990) (juror making "'facial expressions'" suggesting "'that she really did not want to sit,'" "staring strangely," and not being "'particularly articulate'"; another juror "'didn't seem to have the strength of his convictions'" and seemed "'to be shaking his head at inappropriate times'"); United States v. Biaggi, 853 F.2d 89, 96 (2d Cir. 1988) (upholding challenge of jurors "display[ing] angry, arrogant, or flippant demeanors"), cert. denied, 489 U.S. 1052, 109 S. Ct. 1312 (1989).[26]

       Reviewing the cold record, this Court finds it difficult to determine whether Mallard's demeanor provided a race-neutral basis for the prosecutor's peremptory challenge.  While the prosecutor stated that he "didn't get a good sense of [Mallard's] courtroom demeanor" (see page 4 above), the prosecutor failed to elaborate what aspect of Mallard's demeanor was troubling.  Justice

---

[26] See also, e.g., United States v. Hinton, 94 F.3d 396, 397 (7th Cir. 1996) ("Body language has long been used as a basis for peremptory challenges. . . .  The 'science' of choosing jurors often depends on the intuitive senses of the attorneys, and the non-discriminatory exercise of that intuition has been long upheld by the courts."); United States v. Casper, 956 F.2d 416, 418-19 (3d Cir. 1992) (upholding peremptory chalenge based on prosecutor's evaluation of juror's "credibility and demeanor"); United States v. Forbes, 816 F.2d 1006, 1010 (5th Cir. 1987) (upholding peremptory challenge where prosecutor sensed by juror's "posture and demeanor that she was hostile to being in court").

Richter, however, immediately responded that Mallard was "a bit hesitant, a bit reticent."  (See page 5 above.)

Unlike this Court, Justice Richter observed both Mallard's demeanor during jury selection and the prosecutor's demeanor in challenging Mallard.  As the Supreme Court has noted:

> The trial court has a pivotal role in evaluating Batson claims. Step three of the Batson inquiry involves an evaluation of the prosecutor's credibility, and "the best evidence [of discriminatory intent] often will be the demeanor of the attorney who exercises the challenge." In addition, race-neutral reasons for peremptory challenges often invoke a juror's demeanor (e.g., nervousness, inattention), making the trial court's first-hand observations of even greater importance.  In this situation, the trial court must evaluate not only whether the prosecutor's demeanor belies a discriminatory intent, but also whether the juror's demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor.

Snyder v. Louisiana, 552 U.S. 472, 477, 128 S. Ct. 1203, 1208 (2008) (citations omitted); see also, e.g., Thaler v. Haynes, 130 S. Ct. 1171, 1175 (2010) ("[W]hen the explanation for a peremptory challenge 'invoke[s] a juror's demeanor,' the trial judge's 'first hand observations' are of great importance."); Miller-El v. Cockrell, 537 U.S. 322, 339, 123 S. Ct. 1029, 1041 (2003) ("Deference is necessary because a reviewing court, which analyzes only the transcripts from voir dire, is not as well positioned as the trial court is to make credibility determinations.").  Consequently, because "determinations of credibility and demeanor lie peculiarly within a trial judge's province, [the Supreme Court has] stated that in the absence of exceptional circumstances, we would defer to" the trial court.  Snyder v. Louisiana, 552 U.S. at 477, 128 S. Ct. at 1208 (quotations & citations omitted).[27/]

---

[27/]   See also, e.g., Hernandez v. New York, 500 U.S. 352, 364, 111 S. Ct. 1859, 1868 (1991) ("In Batson, we explained that the trial court's decision on the ultimate question of discriminatory
(continued...)

Moreover, the Supreme Court has recently stressed the high level of deference AEDPA provides to state court findings.  See, e.g., Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011) ("[AEDPA] is a 'difficult to meet,' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" (citations omitted)); Felkner v. Jackson, 131 S. Ct. 1305, 1307 (2011) (per curiam) (Batson case: "On federal habeas review, AEDPA 'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'"); Harrington v. Richter, 131 S. Ct. 770, 788 (2011) ("The standards created by Strickland and § 2254(d) are both 'highly deferential.'"); Renico v. Lett, 130 S. Ct. 1855, 1862 (2010).

Additionally, the Supreme Court specifically has made clear that habeas courts must give deference to the state trial court's Batson findings.  See, e.g., Felkner v. Jackson, 131 S. Ct. at 1307; Rice v. Collins, 546 U.S. 333, 341-42, 126 S. Ct. 969, 976 (2006) ("Reasonable minds reviewing the record might disagree about the prosecutor's credibility [regarding a prospective juror's demeanor], . . . on habeas review that does not suffice to supersede the trial court's credibility determination."); Miller-El v. Cockrell, 537 U.S. at 348, 123 S. Ct. at 1045 ("To secure habeas relief [under Batson], petitioner must demonstrate that a state court's finding of the absence of purposeful discrimination was incorrect by clear and convincing evidence, 28 U.S.C. § 2254(e)(1), and that the

---

27/      (...continued)
         intent represents a finding of fact of the sort accorded great deference on appeal."); Batson
         v. Kentucky, 476 U.S. 79, 98 n.21, 106 S. Ct. 1712, 1724, n.21 (1986) ("Since the trial
         judge's findings [of purposeful discrimination] largely will turn on evaluation of credibility,
         a reviewing court ordinarily should give those findings great deference."); see also cases
         cited on page 36 & n.25 above.

41

corresponding factual determination was 'objectively unreasonable' in light of the record before the court.").

Applying AEDPA deference, this Court finds that Robinson has failed to establish that the state courts were objectively unreasonable in crediting the prosecutor's demeanor rationale. While Mallard's hesitance is impossible to determine based on the cold record, Justice Richter, who observed Mallard, noted that he "seem[ed] to be having a little bit of trouble with the questions." (See page 5 above.) Justice Richter found that Mallard's hesitance was sufficiently apparent to those observing him that it was the obvious basis for the prosecutor's demeanor rationale.[28/]  Tellingly, after hearing the prosecutor's reasons for striking Mallard, defense counsel did not challenge the prosecutor's assessment of Mallard's demeanor, but rather argued that he "didn't hear anything that was sufficiently race neutral."  (See pages 4-5 above.)  This indicates that even defense counsel recognized an issue with Mallard's demeanor.

Furthermore, Justice Richter observed the prosecutor's demeanor in exercising and defending his peremptory challenge and found him credible.  This finding also deserves "great deference."  See, e.g., Blalock v. Fisher, 04 Civ. 2252, 2010 WL 2891185 at *3 (S.D.N.Y. July 12, 2010) ("Because the trial judge's findings in a Batson claim will largely turn on her evaluation of

---

[28/]    In denying Robinson's Batson claim, the First Department also found that Mallard's troublesome demeanor was obvious to Justice Richter:  "When the prosecutor cited the panelist's demeanor, the court, employing its unique opportunity to make such observations, immediately recognized what aspect of that demeanor the prosecutor was referring to, confirmed that this concern was legitimate, and concluded that the prosecutor credibly relied on demeanor in exercising a strike." People v. Robinson, 51 A.D.3d 460, 460, 857 N.Y.S.2d 119, 120 (1st Dep't) (emphasis added), appeal denied, 11 N.Y.3d 794, 866 N.Y.S.2d 620 (2008); see page 15 above.

credibility, a reviewing court ordinarily should give those findings great deference."); <u>Brown</u> v. <u>Conway</u>, 06 Civ. 2574, 2010 WL 1221837 at *11 (S.D.N.Y. Mar. 29, 2010) ("The judge's decision [discrediting counsel's proffered reason for striking a juror], based on direct observation of the litigants, is entitled to great deference on appeal, and there is not clear and convincing evidence in the record to upset this finding."); <u>Wells</u> v. <u>Ricks</u>, 07 Civ. 6982, 2008 WL 506294 at *32 (S.D.N.Y. Feb. 26, 2008) (Peck, M.J.) ("Because the trial court is in the best position to observe the demeanor and assess the credibility of the attorney exercising the peremptory challenge, the trial court's factual determinations are to be accorded 'great deference.'" (citations omitted)), <u>report & rec. adopted</u>, 2008 WL 2986503 (S.D.N.Y. Aug 1, 2008); <u>see also</u> cases cited on page 36 & n.25 above.

Consequently, given the level of deference required under the AEDPA, this Court finds that Justice Richter reasonably credited the prosecutor's demeanor rationale and therefore that the state courts' denial of Robinson's <u>Batson</u> claim should not be set aside.

### B.   <u>Employment</u>

The prosecutor's second basis for challenging Mallard was that Mallard "was a blue collar worker" and that the jury "has no white collar jurors."  (<u>See</u> page 4 above.)  Justice Richter accepted this as a race-neutral and non-pretextual basis, finding, "[i]n a case like this, which may involve multiple counts, the People's wish to have some educational diversity is perfectly understandable."  (<u>See</u> page 5 above.)

It is well settled that a prospective juror's education level is a recognized race-neutral reason for exercising peremptory challenges.  <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Farhane</u>, 634 F.3d 127, 155 n.29 (2d Cir. 2011) (noting a prospective juror's "difficulty of comprehension" as a "credible race-

neutral reason for excusing the juror"); Wade v. Cain, 372 F. App'x 549, 554 (5th Cir. 2010) (Peremptory challenge based on the juror's ninth grade education level was race-neutral where the prosecutor was concerned the juror "would have difficulty understanding the concepts involved with DNA evidence."); Taylor v. Roper, 577 F.3d 848, 859-60 (8th Cir. 2009) (Peremptory challenge based on the juror's tenth grade education level was race-neutral.), cert. denied, 130 S. Ct. 3464 (2010); United States v. Alanis, 265 F.3d 576, 584 (7th Cir. 2001) ("lack of education is an acknowledged, non-discriminatory reason for striking a juror"), cert. denied, 535 U.S. 1095, 122 S. Ct. 2289 (2002); United States v. Moeller, 80 F.3d 1053, 1060 (5th Cir. 1996) ("We have previously recognized that education of a panel member may be considered in the appropriate case. . . . In this case, . . . the complex nature of the conspiracy, and the number of interconnected offenses alleged adequately supports the district court's determination that the prosecution articulated adequate race-neutral reasons for the peremptory strikes."); United States v. Hinojosa, 958 F.2d 624, 632 (5th Cir. 1992); United States v. Welch, No. 90-5182, 931 F.2d 55 (table), 1991 WL 61312 at *1 (4th Cir. Apr. 24, 1991); Wynn v. Lempke, 08 Civ. 3894, 2009 WL 982754 at *7 (S.D.N.Y. Apr. 10, 2009) ("[N]umerous courts . . . have upheld the rejection of Batson challenges to a prosecutor's decision to take into account education in making peremptory strikes."), report & rec. adopted, 2009 WL 1227362 (S.D.N.Y. May 5, 2009); Rodriguez v. Senkowski, 03 Civ. 3314, 2004 WL 503451 at *34 (S.D.N.Y. Mar. 15, 2004) (Peck, M.J.) ("Lack of education . . . ha[s] been found to be race-neutral reasons for exercising peremptory challenges."); United States v. Raysor, No. 96 Cr. 339, 2001 WL 761185 at *4-5 (E.D.N.Y. May 14, 2001) (where potential jurors did not finish high school and had a great deal of difficulty answering questions on the questionnaire form

and answering simple questions, held to be non-pretextual reasons for peremptory challenges), aff'd, No. 99-1503, 2001 WL 36037731 (2d Cir. Apr. 29, 2002), cert. denied, 537 U.S. 922, 123 S. Ct. 314 & 537 U.S. 1012, 123 S. Ct. 482 (2002).

Additionally, "courts have generally upheld challenges based on employment as nondiscriminatory and plausible." Cruz v. Artuz, No. CV 96-5209, 1997 WL 269591 at *6 n.7 (E.D.N.Y. Apr. 21, 1997), aff'd, 133 F.3d 906 (2d Cir. 1997); see, e.g., J.E.B. v. Alabama, 511 U.S. 127, 142 n.14, 114 S. Ct. 1419, 1428 n.14 (1994) ("[W]here peremptory challenges are made on the basis of group characteristics other than race or gender (like occupation, for example), they do not reinforce the same stereotypes about the group's competence or predispositions that have been used to prevent them from voting, participating on juries, pursuing their chosen professions, or otherwise contributing to civic life."); Mullins v. Bennett, 228 F. App'x 55, 56 (2d Cir.) (noting "the general recognition of employment as a race-neutral reason for exclusion"), cert. denied, 552 U.S. 911, 128 S. Ct. 259 (2007); Moore v. Walker, No. 99-2754, 234 F.3d 1262 (table), 2000 WL 1721120 at *2 (2d Cir. Nov. 16, 2000) (employment "has been found to be acceptable race-neutral bases for peremptory challenges"); Jordan v. LeFevre, 206 F.3d 196, 200 (2d Cir. 2000) ("type of employment" has "been found to be [an] acceptable race neutral bas[i]s for peremptory challenges").[29]

---

[29]    See also, e.g., Cruz v. Smith, 05 Civ. 10703, 2010 WL 582348 at *13 (S.D.N.Y. Feb. 17, 2010) ("[A] prosecutor may strike jurors for reasons such as their . . . type of employment, and demeanor." (quotation omitted)); Thigpen v. Brown, No. 06 CV 3110, 2008 WL 5110890 at *10 (E.D.N.Y. Dec. 2, 2008) ("Strikes based on a prospective juror's profession . . . are acceptable."); Rodriguez v. Senkowski, 2004 WL 503451 at *33; Stays v. Herbert, No. 01-CV-2400, 2003 WL 22765352 at *5 (E.D.N.Y. Nov. 24, 2003) ("Juror['s] (continued...)

Robinson argued that the prosecutor's "white collar worker" rationale was pretextual because several of the jurors selected prior to the Mallard challenge "likely did not have substantial educational backgrounds."  (Dkt. No. 11: State App'x Ex. A: Robinson 1st Dep't Br. at 32.)  Specifically, Robinson noted that the first ten jurors selected included a former building superintendent and a child care worker, as well as several jurors with "administrative jobs" such as paralegal, pension supervisor, booking agent and publisher's assistant.  (Robinson 1st Dep't Br. at 32; see also page 4 n.2 above.)   Moreover, Robinson argued, the prosecutor struck several prospective jurors "whose jobs indicated a more substantial educational background," including a certified social worker, a teacher, an architect and a graphics researcher.  (Robinson 1st Dep't Br. at 32; see also page 4 n.2 above.)

The uneven application of a facially race-neutral explanation does not, by itself, necessarily establish the invalidity of the explanation.  See, e.g., United States v. Novaton, 271 F.3d 968, 1004 (11th Cir. 2001), cert. denied, 535 U.S. 1120, 122 S. Ct. 2345 (2002); Matthews v. Evatt, 105 F.3d 907, 918 (4th Cir.) ("Batson is not violated whenever two veniremen of different races provide the same responses and one is excused and the other is not. . . . because counsel must be entitled to make credibility determinations in exercising peremptory challenges."), cert. denied, 522

---

29/     (...continued)
employment as a home health aid" held to be a "legitimate reason" for prosecutor's peremptory challenge."); Baker v. Bennett, 235 F. Supp. 2d 298, 312 (S.D.N.Y. 2002); Rodriguez v. Lord, 00 Civ. 0402, 2001 WL 1223864 at *22 (S.D.N.Y. Oct. 15, 2001) (Peck, M.J.), report & rec. adopted, 2004 WL 2149116 (S.D.N.Y. Sept. 22, 2004) (Daniels, D.J.); Green v. Kelly, 99 Civ. 9082, 2000 WL 1871711 at *6 (S.D.N.Y. Dec. 21, 2000) ("the equal protection principles of Batson and its progeny . . . do not apply" where party strikes juror based on occupation).

U.S. 833, 118 S. Ct. 102 (1997); <u>United States</u> v. <u>Spriggs</u>, 102 F.3d 1245, 1255 (D.C. Cir.), <u>cert.</u>

<u>denied</u>, 522 U.S. 831, 118 S. Ct. 97 (1997); <u>United States</u> v. <u>Stewart</u>, 65 F.3d 918, 926 (11th Cir.

1995) ("We recognize that failing to strike a white juror who shares some traits with a struck black

juror does not itself automatically prove the existence of discrimination."), <u>cert. denied</u>, 516

U.S. 1134, 116 S. Ct. 958 (1996); <u>United States</u> v. <u>Alvarado</u>, 951 F.2d 22, 25 (2d Cir. 1991)

("Decisions in other circuits have observed that an explanation for a peremptory challenge, though

weakened, is not automatically to be rejected simply because it applies to a non-minority

venireperson who was not challenged.").[30]

       As the Second Circuit has stated, however, "[t]he force of [counsel's] explanation for

challenging a minority member of a venire is obviously weakened substantially by evidence that

non-minority members to whom the same explanation applies were not challenged." <u>United States</u>

v. <u>Alvarado</u>, 951 F.2d at 25; <u>accord</u>, <u>e.g.</u>, <u>United States</u> v. <u>Thomas</u>, 320 F.3d 315, 318 (2d Cir. 2003)

("'Support for the notion that there was purposeful discrimination in the peremptory challenge may

lie in the similarity between the characteristics of jurors struck and jurors accepted.  Where the

principal difference between them is race, the credibility of the [attorney exercising the peremptory]

explanation is much weakened.'"); <u>Jordan</u> v. <u>Lefevre</u>, 293 F.3d 587, 594 (2d Cir. 2002) ("'The

---

[30]    <u>See also</u>, <u>e.g.</u>, <u>Holder</u> v. <u>Welborn</u>, 60 F.3d 383, 390 (7th Cir. 1995); <u>Burks</u> v. <u>Borg</u>, 27 F.3d 1424, 1429 (9th Cir. 1994), <u>cert. denied</u>, 513 U.S. 1160, 115 S. Ct. 1122 (1995); <u>United States</u> v. <u>Valley</u>, 928 F.2d 130, 136 (5th Cir. 1991); <u>United States</u> v. <u>Lance</u>, 853 F.2d 1177, 1181 (5th Cir. 1988); <u>United States</u> v. <u>McCoy</u>, 848 F.2d 743, 745 (6th Cir. 1988); <u>Rodriguez</u> v. <u>Senkowski</u>, 2004 WL 503451 at *36; <u>Besser</u> v. <u>Walsh</u>, 02 Civ. 6775, 2003 WL 22093477 at *28 (S.D.N.Y. Sept. 10, 2003) (Peck, M.J.), <u>report & rec. adopted</u>, 2003 WL 22846044 (S.D.N.Y. Dec. 2, 2003); <u>Owens</u> v. <u>Portuondo</u>, 98 Civ. 6559, 1999 WL 378343 at *11 (S.D.N.Y. June 9, 1999) (Peck, M.J.), <u>aff'd</u>, 205 F.3d 1324 (2d Cir. 2000).

relative plausibility or implausibility of each explanation for a particular challenge, assessed in light of the prosecution's acceptance of jurors with similar circumstances, may strengthen or weaken the assessment of the prosecution's explanation as to other challenges and thereby assist the fact-finder in determining overall intent.'" (quoting United States v. Alvarado, 923 F.2d 253, 256 (2d Cir. 1991))).[31]

In accepting the prosecutor's employment rationale, Justice Richter failed to address its possible inconsistent application.[32] In the past, when faced with a state court's inadequate Batson analysis, a habeas court could either conduct a reconstruction hearing "to expand the record as it may deem appropriate to resolve [petitioner's] Batson claims" or "return the matter, through the device of a conditional writ, to the state court for reconsideration." Galarza v. Keane, 252 F.3d 630, 640 (2d Cir. 2001).[33] In April 2011, however, the Supreme Court ruled that "review under §

---

[31] See also, e.g., Roman v. Abrams, 822 F.2d 214, 228 (2d Cir. 1987) (upholding district court's finding that prosecutor's reasons for striking jurors were pretextual where, inter alia, only exercised against white jurors with that characteristic but not against non-white jurors with similar characteristic), cert. denied, 489 U.S. 1052, 109 S. Ct. 1311 (1989); Haywood v. Portuando, 288 F. Supp. 2d 446, 461 (S.D.N.Y. 2003) ("Courts have routinely held that when characteristics are shared by excused members of the venire and those ultimately chosen to serve-and the only difference between them is race-the trial judge may rightly consider that fact as evidence of a pretext." (citing cases)).

[32] While the First Department noted "an alleged disparity in the prosecutor's pattern of challenges" regarding his "employment-related reason," the court ruled, in conclusory fashion, that "the record sufficiently explains" the disparity. See People v. Robinson, 51 A.D.3d 460, 460, 857 N.Y.S.2d 119, 120 (1st Dep't), appeal denied, 11 N.Y.3d 794, 866 N.Y.S.2d 620 (2008); see page 15 above. The First Department, however, never described the "alleged disparity" or how it was adequately explained by the record.

[33] See also, e.g., Howard v. Senkowski, 986 F.2d 24, 30 (2d Cir. 1993) (remanding Batson claim "to the District Court and leave to the District Judge the decision whether to apply dual motivation analysis on the current record or such expanded record as he deems appropriate,
(continued...)

2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits" and therefore "evidence introduced in federal court has no bearing on § 2254(d)(1) review." Cullen v. Pinholster, 131 S. Ct. 1388, 1398, 1400 (2011).  Consequently, it would be inappropriate for this Court to conduct a reconstruction hearing to resolve Robinson's habeas claim.

> Moreover, the Supreme Court has recognized that:
>
> [A] retrospective comparison of jurors based on a cold appellate record may be very misleading when alleged similarities were not raised at trial.  In that situation, an appellate court must be mindful that an exploration of the alleged similarities at the time of trial might have shown that the jurors in question were not really comparable.

Snyder v. Louisiana, 552 U.S. 472, 483, 128 S. Ct. 1203, 1211 (2008).  Such a comparison may be probative, however, where "the shared characteristic . . . was thoroughly explored by the trial court." See Snyder v. Louisiana, 552 U.S. at 483, 128 S. Ct. at 1211.  After hearing the prosecutor's employment rationale, Robinson's counsel did not raise the argument later raised on direct appeal (Dkt. No. 11: State App'x Ex. A: Robinson 1st Dep't Br. at 32), that the prosecutor's rationale was pretextual because he failed to challenge some blue collar workers and had struck several white collar workers.  Consequently, Robinson's pretext argument is suspect because Justice Richter did not have the opportunity to determine whether Mallard was comparable to the other jurors and the prosecutor was never asked to explain his use of other peremptory challenges.[34/]

---

[33/]    (...continued)
or to return the matter, through the device of a conditional writ, to the state court so that the proper analysis may be made there.").

[34/]    For example, despite the fact that the prospective jurors who were employed as a teacher or a social worker were presumably educated, the prosecutor may have challenged these jurors because such workers tend to sympathize with defendants.  See, e.g., United States. v. Maxwell, 473 F.3d 868, 872 (8th Cir.) ("The government explained that it struck [the
(continued...)

Furthermore, even if the prosecutor's employment rationale was weakened by its allegedly inconsistent application, this Court finds, based on the current record, that Justice Richter was not "objectively unreasonable" in crediting it. As noted on page 36 & n.25 above, in a Batson analysis, the trial judge's credibility determinations deserve deference since the trial judge had the opportunity to observe the prosecutor's demeanor in exercising and defending the peremptory challenge. AEDPA provides additional deference (see cases cited on pages 40-41 above), and requires that a petitioner, in a Batson case, "must demonstrate that a state court's finding of the absence of purposeful discrimination was incorrect by clear and convincing evidence, 28 U.S.C. § 2254(e)(1), and that the corresponding factual determination was 'objectively unreasonable' in light of the record before the court." Miller-El v. Cockrell, 537 U.S. at 348, 123 S. Ct. at 1045.

Given this double deference, Robinson has not met his heavy burden. As noted on pages 34-35 & n.24 above, Batson's third step requires that the totality of circumstances be

---

34/     (...continued)
         prospective juror] because he was employed as a teacher, which the government believed might make the juror biased in favor of [defendant]. The inference that a juror's employment might make the juror more sympathetic to a criminal defendant is a valid, race-neutral reason for striking a juror."), cert. denied, 550 U.S. 952, 127 S. Ct. 2292 (2007); United States v. Alvarado, 951 F.2d at 25 (accepting prosecutor's explanation that venireperson's "role as a social worker" made her a less desirable juror than even a guidance counselor); Rodriguez v. Senkowski, 2004 WL 503451 at *33 & n.47; David C. Baldus, The Use of Peremptory Challenges in Capital Murder Trials: A Legal and Empirical Analysis, 3 U. Pa. J. Const. L. 3, 14-15 (Feb. 2001) (recognizing that prosecutors perceive "people from the helping professions, such as doctors, lawyers, and social workers" as a threat); John A. Waskoff, Lockhart v. McCree: Death Qualification as a Determination of the Impartiality and Representativeness of a Jury in Death Penalty Cases, 72 Cornell L. Rev. 1075, 1113 n.178 (July 1987) ("'People in 'liberal arts' fields such as teaching, or in the helping professions (nurses, social workers), . . . may be well-attuned to defense arguments.'").

considered.  After considering the complexity of the case (i.e., multiple victims and multiple charges for each victim), Justice Richter found that "the People's wish to have some educational diversity is perfectly understandable."  (See page 5 above.)  Notably, even though Robinson's trial counsel argued that the prosecutor's reasons were not race neutral (see pages 4-5 above), Robinson's counsel subsequently used the employment rationale himself in claiming, in response to the prosecutor's Batson challenge, that the defense struck prospective white jurors because they had "extensive educational backgrounds" and Robinson's counsel wanted a "blue collar jury."  (See page 5 n.3 above.)  Thus, the record supports Justice Richter's finding that Mallard's "blue collar" employment was a race-neutral basis for the prosecutor's challenge.

Additionally, as noted on pages 41-42 above, Justice Richter's credibility determination deserves "great deference" because she actually observed the prosecutor's demeanor in exercising and defending the Mallard challenge.  In addition, the prosecutor's genuineness was reinforced by the fact that his demeanor rationale was consistent with Justice Richter's observations. See, e.g., United States v. Alvarado, 951 F.2d at 26 ("In deciding the ultimate issue of discriminatory intent, the judicial officer is entitled to assess each explanation in light of all the other evidence relevant to prosecutorial intent.  The officer may think a dubious explanation undermines the bona fides of other explanations or may think that the sound explanations dispel the doubt raised by a questionable one.").  Consequently, even if this Court were to disagree with Justice Richter's factual determinations, Robinson has failed to establish that the state courts were "objectively unreasonable" in crediting the prosecutor's employment rationale.

In sum, this court finds that Justice Richter reasonably credited the prosecutor's demeanor and employment rationales.  Consequently, the First Department's decision affirming Justice Richter's denial of Robinson's Batson claim was not an unreasonable application of Supreme Court precedent or an unreasonable determination of the facts.  Accordingly, Robinson's Batson habeas claim should be DENIED.

## III.    ROBINSON'S CLAIMS THAT JUSTICE RICHTER'S JURY CHARGES WERE IMPROPER ARE PROCEDURALLY BARRED BY AN ADEQUATE AND INDEPENDENT STATE LAW GROUND

Robinson claims that Justice Richter deprived him of a fair trial by including "[c]oercive language in [her] Allen charge" and "charging the jury to [c]onsider [a]n [u]nindicted [c]ase theory."  (Dkt. No. 1: Pet. ¶ 12(B).)  The First Department rejected Robinson's claims procedurally and on the merits:  Robinson's "challenges to the court's main and supplemental charges are unpreserved and we decline to review them in the interest of justice.  As an alternative holding, we also reject them on the merits.  People v. Robinson, 51 A.D.3d 460, 460, 857 N.Y.S.2d 119, 120 (1st Dep't), appeal denied, 11 N.Y.3d 794, 866 N.Y.S.2d 620 (2008); see page 15 above.

### A.    The Adequate & Independent State Ground Doctrine

The Supreme Court has made clear that the "adequate and independent state ground doctrine applies on federal habeas," such that "an adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the

federal claim will result in a fundamental miscarriage of justice." Harris v. Reed, 489 U.S. 255, 262, 109 S. Ct. 1038, 1043 (1989) (citations & internal quotations omitted).[35]

"[I]n order to preclude federal review [under the adequate and independent doctrine], the last state court to render judgment must 'clearly and expressly state . . . that its judgment rest[ed] on a state procedural bar.'" Jones v. Vacco, 126 F.3d at 415 (quoting Glenn v. Bartlett, 98 F.3d at 724). The Second Circuit has made clear that "federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim." Velasquez v. Leonardo, 898 F.2d at 9; accord, e.g., Harris v. Reed, 489 U.S. at 264 n.10, 109 S. Ct. at 1044 n.10 ("[A] state court need not fear reaching the merits of a federal claim in an alternative holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.").[36] Thus, "as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision," the adequate and independent doctrine "curtails

---

[35] See also, e.g., Walker v. Martin, 131 S. Ct. 1120, 1127 (2011); Schlup v. Delo, 513 U.S. 298, 314-16, 115 S. Ct. 851, 860-61 (1995); Coleman v. Thompson, 501 U.S. 722, 735, 111 S. Ct. 2546, 2557 (1991); Murray v. Carrier, 477 U.S. 478, 485-88, 496, 106 S. Ct. 2639, 2644-45, 2649-50 (1986); Garcia v. Lewis, 188 F.3d 71, 76-77 (2d Cir. 1999); Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997); Reyes v. Keane, 118 F.3d 136, 138-40 (2d Cir. 1997); Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996), cert. denied, 520 U.S. 1108, 117 S. Ct. 1116 (1997); Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990).

[36] See, e.g., Garcia v. Lewis, 188 F.3d at 77-82; Glenn v. Bartlett, 98 F.3d at 724-25; see also, e.g., Santiago v. People, 97 Civ. 5076, 1998 WL 803414 at *4 (S.D.N.Y. Oct. 13, 1998) ("When the state court rejects a claim both on the merits and because it was waived under the state's procedural law, review of the claim on a federal habeas corpus petition is barred.").

reconsideration of the federal issue on federal habeas." <u>Harris</u> v. <u>Reed</u>, 489 U.S. at 264 n.10, 109

S. Ct. at 1044 n.10.

> State courts are not required to use any particular language:

>> We encourage state courts to express plainly, in every decision potentially subject to federal review, the grounds upon which their judgments rest, but we will not impose on state courts the responsibility for using particular language in every case in which a state prisoner presents a federal claim – every state appeal, every denial of state collateral review – in order that federal courts might not be bothered with reviewing state law and the record in the case.

<u>Coleman</u> v. <u>Thompson</u>, 501 U.S. at 739, 111 S. Ct. at 2559.

> Unlike the situation where the state court holds that claims were either unpreserved <u>or</u> without merit, which the Second Circuit has found is usually too ambiguous to preclude habeas review, <u>e.g.</u>, <u>Galarza</u> v. <u>Keane</u>, 252 F.3d 630, 637 (2d Cir. 2001), the First Department explicitly found Robinson's claim unpreserved; the fact that the First Department alternatively rejected them on the merits does not change the result.  <u>See</u>, <u>e.g.</u>, <u>Green</u> v. <u>Travis</u>, 414 F.3d 288, 294 (2d Cir. 2005) ("[E]ven when a state court says that a claim is 'not preserved for appellate review' but then rules 'in any event' on the merits, such a claim is procedurally defaulted."); <u>Fama</u> v. <u>Comm'r of Corr. Servs.</u>, 235 F.3d 804, 810-11 & n.4 (2d Cir. 2000) ("[W]here a state court says that a claim is 'not preserved for appellate review' and then ruled 'in any event' on the merits, such a claim is not preserved."); <u>Glenn</u> v. <u>Bartlett</u>, 98 F.3d at 724-25 & n.3 (state decision which denied prosecutorial misconduct claim as not preserved for appellate review represented an independent and adequate state procedural ground even though court addressed merits of claim "in the interests of justice"); <u>Velasquez</u> v. <u>Leonardo</u>, 898 F.2d at 9 (state decision which denied claims as procedurally barred but then alternatively addressed merits rested on adequate and independent state grounds).  Thus, the

First Department's decision as to Robinson's claims regarding Justice Richter's jury charges unambiguously rested on a state procedural ground.

   The Supreme Court has established that "the procedural bar doctrine only precludes habeas review when the state procedural ground is firmly established and regularly followed by the state courts." Simpson v. Portuondo, 01 Civ. 8744, 2002 WL 31045862 at *4 (S.D.N.Y. June 4, 2002) (citing James v. Kentucky, 466 U.S. 341, 348-49, 104 S. Ct. 1830, 1835 (1984)); accord, e.g., Walker v. Martin, 131 S. Ct. at 1128 ("To qualify as an 'adequate' procedural ground, a state rule must be 'firmly established and regularly followed.'"); see, e.g., Lee v. Kemna  534 U.S. 362, 376, 122 S. Ct. 877, 885 (2002) ("[V]iolation of 'firmly established and regularly followed' state rules . . . [are] adequate to foreclose review of a federal claim.").37/

   Even if a state rule is discretionary, it can serve as an adequate and independent state ground, as the Supreme Court has made clear:

> We hold that a discretionary state procedural rule can serve as an adequate ground to bar federal habeas review.  Nothing inherent in such a rule renders it inadequate for purposes of the adequate state ground doctrine.  To the contrary, a discretionary rule can be "firmly established" and "regularly followed" – even if the

---

37/ See also, e.g., Clark v. Perez, 510 F.3d 382, 391 (2d Cir.) ("To determine whether a state procedural bar is 'adequate to support the judgment,' a federal habeas court should look to whether 'the state rule at issue . . . is firmly established and regularly followed.'" (citations omitted)), cert. denied, 129 S. Ct. 130 (2008); Murden v. Artuz, 497 F.3d 178, 192 (2d Cir. 2007) (To be "adequate," the state procedural requirement must be "'firmly established and regularly followed by the state in question' in the specific circumstances presented in the instant case."), cert. denied, 552 U.S. 1150, 128 S. Ct. 1083 (2008); Cotto v. Herbert, 331 F.3d 217, 239 (2d Cir. 2003) ("'State courts may not avoid deciding federal issues by invoking procedural rules that they do not apply evenhandedly to all similar claims.'"); Nunez v. Conway, 07 Civ. 7560,  2010 WL 234826 at* 9 (S.D.N.Y. Jan. 20, 2010); Roldan v. Ercole, 08 Civ. 6548, 2009 WL 2191176 at *3 (S.D.N.Y. July 20, 2009).

appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others.

Beard v. Kindler, 130 S. Ct. 612, 618 (2009); accord, e.g., Walker v. Martin, 131 S. Ct. at 1125 (In Beard, the Supreme "Court clarified that a state procedural bar may count as an adequate and independent ground for denying a federal habeas petition even if the state court had discretion to reach the merits despite the default.").

New York's contemporaneous objection rule, codified in Criminal Procedure Law § 470.05(2), provides that issues "not raised at trial may not be considered for the first time on appeal." People v. Thomas, 50 N.Y.2d 467, 471, 429 N.Y.S.2d 584 (1980) (citing C.P.L. § 470.05(2)).[38] Moreover, a party must make a specific protest at the time of a claimed error to preserve an issue for appellate review. E.g., People v. Hardy, 4 N.Y.3d 192, 197 n.3, 791 N.Y.S.2d 513, 517 n.3 (2005). Hence, if a party neglects to raise a claim in the trial court, or fails to specify the grounds for an objection (either because the objection is general, or because it specifies a

---

[38]   C.P.L. § 470.05(2) provides, in relevant part:

> For the purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same. Such protest need not be in the form of an "exception" but is sufficient if the party made his position with respect to the ruling or instruction known to the court, or if in response to a protest by a party, the court expressly decided the question raised on appeal. In addition, a party who without success has either expressly or impliedly sought or requested a particular ruling or instruction, is deemed to have thereby protested the court's ultimate disposition of the matter or failure to rule or instruct accordingly sufficiently to raise a question of law with respect to such disposition or failure regardless of whether any actual protest thereto was registered.

56

different ground than that raised on appeal), state appellate courts generally will not consider that claim. E.g., People v. Cona, 49 N.Y.2d 26, 33, 424 N.Y.S.2d 146, 148 (1979); see also, e.g., Olivo v. Thorton, 05 Civ. 3237, 2005 WL 3292542 at *10 (S.D.N.Y. Dec. 6, 2005) (Peck, M.J.) ("Under New York law, a party's failure to specify the grounds for its general objection also renders its argument unpreserved for appellate review." (citing N.Y. cases)), report & rec. adopted, 2006 WL 2689889 (S.D.N.Y. Sept. 19, 2006).

### B.    Robinson's Trial Counsel Failed to Preserve Robinson's Jury Charge Claims

"Under New York law, a defendant must object to an alleged error in a jury instruction before the trial court in order to preserve the issue for appeal." Reyes v. Keane, 118 F.3d 136, 138 (2d Cir. 1997).[39]

---

[39]    See, e.g., People v. Autry, 75 N.Y.2d 836, 839, 552 N.Y.S.2d 908, 909-10 (1990) ("[I]n the absence of objection at trial, the defendants' appellate challenges to the charge present no reviewable question of law."); People v. Robinson, 36 N.Y.2d 224, 228, 367 N.Y.S.2d 208, 211 (1975) ("The failure to object to the charge in this case or to request further clarifications at a time when the error complained of could readily have been corrected preserved no questions of law reviewable in this court."); People v. Thomas, 33 A.D.3d 1056, 1058, 822 N.Y.S.2d 803, 805 (3d Dep't 2006) ("[A]s defendant failed to object to County Court's jury instructions or specifically request a charge concerning [the witness'] status as a purported accomplice, these issues are not properly before us for review."), appeal denied, 8 N.Y.3d 850, 830 N.Y.S.2d 709 (2007); People v. Abdullah, 28 A.D.3d 940, 942, 813 N.Y.S.2d 805, 807 (3d Dep't) ("Defendant's challenge to County Court's Allen charge was not preserved by a timely objection."), appeal denied, 7 N.Y.3d 784, 821 N.Y.S.2d 814 (2006); People v. Edwards, 28 A.D.3d 491, 492, 811 N.Y.S.2d 586, 596 (2d Dep't 2006) ("[T]he defendant did not preserve for appellate review his claim that the court erred in failing to charge the jury with respect to the accomplice-corroboration requirement of CPL 60.22, as he neither requested such a charge nor specifically objected to the court's failure to give it."), appeal denied, 9 N.Y.3d 1033, 852 N.Y.S.2d 18 (2008); People v. Coleman, 235 A.D.2d 928, 928, 653 N.Y.S.2d 423, 424 (3d Dep't) ("Defendant next objects to the Allen charge given to the jury as coercive and suggestive . . . .  Since defendant did not preserve the issue by any objection, we deem the objection waived and decline to consider the
(continued...)

It is well settled that failure to object at trial when required by New York's contemporaneous objection rule, C.P.L. § 470.05, is an adequate and independent bar to federal habeas review.  See, e.g., Wainwright v. Sykes, 433 U.S. 72, 86, 90, 97 S. Ct. 2497, 2506-08 (1977) (contemporaneous objection rule is an adequate and independent state ground); Murray v. Carrier, 477 U.S. 478, 485-92, 497, 106 S. Ct. 2639, 2644-48, 2650 (1986) (same); Brown v. Ercole, 353 F. App'x 518, 520 (2d Cir. 2009) ("[A]pplication of New York's contemporaneous objection rule may bar federal habeas review."); Garvey v. Duncan 485 F.3d 709, 720 (2d Cir. 2007) (Petitioner's claim "was not raised either by specific objection or by the trial court's decision.  As a consequence, . . . [w]e need not reach or decide the defendant's federal claims, since there was an independent and adequate state law ground for the state appellate court's decision to affirm the defendant's conviction."); Richardson v. Greene, 497 F.3d 212, 219 (2d Cir. 2007) ("[I]n accordance with New York case law, application of the state's preservation rule is adequate – i.e., firmly established and regularly followed."); Franco v. Walsh, 73 F. App'x 517, 518 (2d Cir. 2003) (Petitioner's claim of an erroneous jury charge was procedurally defaulted because "[n]o contemporaneous objection to the charge was lodged, and the Appellate Division found that the issue was therefore unpreserved."); Garcia v. Lewis, 188 F.3d 71, 79 (2d Cir. 1999) ("we have observed and deferred to New York's consistent application of its contemporaneous objection rules" (citing Bossett v. Walker, 41 F.3d 825, 829 n.2 (2d Cir. 1994) (respecting state court's application of C.P.L. § 470.05(2) as adequate bar to federal habeas review), cert. denied, 514 U.S. 1054, 115

---

39/     (...continued)
          matter."), appeal denied, 89 N.Y.2d 1033, 659 N.Y.S.2d 864 (1997).

S. Ct. 1436 (1995), & Fernandez v. Leonardo, 931 F.2d 214, 216 (2d Cir.) (noting that failure to object at trial constitutes adequate procedural default under C.P.L. § 470.05(2)), cert. denied, 502 U.S. 883, 112 S. Ct. 236 (1991))).[40/]

More specifically, the Second Circuit has ruled that failure to properly object to a jury charge is an adequate and independent state ground barring habeas relief.  See, e.g., Zarvela v. Artuz, 364 F.3d 415, 418-19 (2d Cir.) ("Petitioner's second claim is that the state trial court's jury instructions on reasonable doubt diminished the State's burden and thereby violated his constitutional right to a fair trial.  The Appellate Division held that this claim was unpreserved for appellate review, and, in any event, was without merit.  The District Court correctly held that petitioner's claim was procedurally defaulted for lack of a contemporaneous objection." (citations omitted)), cert. denied, 543 U.S. 879, 125 S. Ct. 140 (2004); Franco v. Walsh, 73 F. App'x at 518 (Petitioner's claim of an erroneous jury charge was procedurally defaulted because "[n]o contemporaneous objection to the charge was lodged, and the Appellate Division found that the issue was therefore unpreserved."); Reyes v. Keane, 118 F.3d at 138 ("A state prisoner who fails to

---

[40/]    See also, e.g., Glenn v. Bartlett, 98 F.3d 721, 724-25 (2d Cir. 1996) (failure to object constituted adequate and independent state ground), cert. denied, 520 U.S. 1108, 117 S. Ct. 1116 (1992); Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990) (violation of New York's contemporaneous objection rule is an adequate and independent state ground); Figueroa v. Greiner, 02 Civ. 2126, 2002 WL 31356512 at *11-12 (S.D.N.Y. Oct. 18, 2002) (Peck, M.J.) ("The Second Circuit has held that the failure to object at trial when required by New York's contemporaneous objection rule, C.P.L. § 470.05, is an adequate and independent state ground."); Jamison v. Smith, No. 94 CV 3747, 1995 WL 468279 at *2 (E.D.N.Y. July 26, 1995) ("Courts in this circuit have consistently held that the failure to object contemporaneously . . . constitutes an adequate and independent basis for barring habeas review.").

object to a jury instruction in accordance with state procedural rules procedurally forfeits that argument on federal habeas review.").[41]

Robinson's trial counsel failed to object to Justice Richter's jury charge, her supplemental jury instruction or her <u>Allen</u> charge to the jury.  (<u>See</u> page 12 above.)  Consequently, Robinson's claims pertaining to Justice Richter's jury charges are unpreserved and should be <u>DENIED</u> as barred by an adequate and independent state bar.[42]

## IV.   ROBINSON'S REPUGNANT VERDICT CLAIM IS NOT COGNIZABLE ON FEDERAL HABEAS REVIEW

Robinson claims that the jury's verdict was repugnant because it convicted him of "[a]ssault with a [d]eadly [w]eapon" but acquitted him of weapons possession.  (Dkt. No. 1: Pet. ¶ 12(C).)  Robinson's brief to the First Department argued that:

---

[41]    See also, e.g., Sable v. Artus, 09 Civ. 7242, 2010 WL 3719270 at *13 (S.D.N.Y. Sept. 23, 2010) ("The Second Circuit has squarely held that '[a] state prisoner who fails to object to a jury instruction in accordance with state procedural rules procedurally forfeits that argument on federal habeas review.'" (quoting Reyes v. Keane, 118 F.3d at 138)); Bent v. McGinnis, 03 Civ. 9816, 2008 WL 2421626 at *6 (S.D.N.Y. June 12, 2008) ("Moreover, courts of this circuit have specifically held that application of New York's contemporaneous objection rule to claims involving jury instructions is an independent and adequate state law ground that precludes federal habeas review."); Parreno v. Annetts, 04 Civ.10153, 2006 WL 689511 at *9 (S.D.N.Y. Mar. 20, 2006) ("[T]he Second Circuit has squarely held that the failure to object to a jury instruction at trial constitutes a procedural default under New York law barring habeas review.").

[42]    To avoid a procedural default on his unpreserved claims, Robinson would have to "show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claims will result in a fundamental miscarriage of justice," i.e., a showing of "actual innocence."  Harris v. Reed,  489 U.S. 255, 262, 109 S. Ct. 1038, 1043 (1989) (citations & quotations omitted); accord, e.g., Walker v. Martin, 131 S. Ct. 1120, 1127 (2011); Schlup v. Delo, 513 U.S. 298, 324-27, 115 S. Ct. 851, 865-67 (1995); Coleman v. Thompson, 501 U.S. 722, 735, 111 S. Ct. 2546, 2557 (1991).  Robinson has not alleged cause and prejudice nor has he made a showing of actual innocence.

> Pursuant to [Justice Richter's] charge, by convicting [Robinson] of first-degree assault, the jury necessarily found that [Robinson] intentionally caused serious physical injury by means of a gun.  Yet by acquitting him of criminal possession of a weapon, the jury inconsistently found that [Robinson] did not possess a gun with the intent to use it unlawfully against another.  Such a verdict is repugnant and cannot stand.

(Dkt. No. 11: State App'x Ex. A: Robinson 1st Dep't Br. at 50.)

Robinson's repugnancy claim is not cognizable on habeas review.  It is well settled that "inconsistent jury verdicts are not a ground for habeas relief."  Estrada v. Senkowski, 98 Civ. 7796, 1999 WL 1051107 at *13-14 (S.D.N.Y. Nov. 19, 1999) (Pauley, D.J. & Peck, M.J.) (citing cases); see, e.g., United States v. Powell, 469 U.S. 57, 58, 64-65, 105 S. Ct. 471, 473, 476 (1984) ("[W]here truly inconsistent verdicts have been reached, '[t]he most that can be said . . . is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt.' . . .  It is equally possible that the jury, convinced of guilt, properly reached its conclusion . . . then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the [other] offense."); Harris v. Rivera, 454 U.S. 339, 345, 102 S. Ct. 460, 464 (1981) ("Inconsistency in a verdict is not a sufficient reason for setting it aside."); Dunn v. United States, 284 U.S. 390, 393-94, 52 S. Ct. 189, 190-91 (1932); Suarez v. Bennett, 207 F. App'x 114, 116 (2d Cir. 2006) ("[W]e are not permitted to grant habeas simply because a jury's verdicts are inconsistent."), cert. denied, 551 U.S. 1106, 127 S. Ct. 2919 (2007); United States v. Acosta, 17 F.3d 538, 545 (2d Cir. 1994) ("[I]t has long been

established that inconsistency in jury verdicts of guilty on some counts and not guilty on others is

not a ground for reversal of the verdicts of guilty.").[43/]

   Thus, Robinson's repugnant verdict habeas claim should be <u>DENIED</u> as not

cognizable on federal habeas review.

## V. ROBINSON'S EXCESSIVE SENTENCE HABEAS CLAIM IS NOT COGNIZABLE ON HABEAS REVIEW

   Robinson's excessive sentence claim (Dkt. No. 1: Pet. ¶ 12(D)) should be denied

because it is not cognizable on habeas review.

---

[43/]  See also, e.g., United States v. Alvarado, 882 F.2d 645, 653 (2d Cir. 1989), cert. denied, 493 U.S. 1071, 110 S. Ct. 1114 (1990); United States v. Romano, 879 F.2d 1056, 1060 (2d Cir. 1989); United States v. Chang An-Lo, 851 F.2d 547, 559-60 (2d Cir.), cert. denied, 488 U.S. 966, 109 S. Ct. 493 (1988); Cimino v. Conway, No. 08-CV-6318, 2011 WL 815677 at *5 (W.D.N.Y. Mar. 2, 2011) ("[I]t is well-settled that inconsistent jury verdicts, that is, where a conviction is inconsistent with the jury's verdict of acquittal on another count or where the verdicts treat codefendants in a joint trial inconsistently, are constitutionally permissible, and do not present a question for federal habeas review."); McTier v. People of New York, 07-CV-870, 2009 WL 792087 at *8 (E.D.N.Y. Mar. 23, 2009) ("[I]t is well settled that '[a] claim of inconsistent or repugnant verdicts generally presents no issue upon which federal habeas corpus relief could be granted.'"); Mitchell v. Artus, 07 Civ. 4688, 2008 WL 2262606 at *36 n.54 (S.D.N.Y. June 2, 2008) (Peck, M.J.) (citing cases), report & rec. adopted, 2008 WL 3884373 (S.D.N.Y. Aug. 21, 2008); Williams v. Artuz, 98 Civ. 7964, 2002 WL 989529 at *8 (S.D.N.Y. May 15, 2002) ("A claim of inconsistent or repugnant verdicts presents no issue upon which federal habeas corpus relief could be granted."); Torres v. Costello, No. 97-CV-5480, 2001 WL 811924 at *11 (E.D.N.Y. June 1, 2001) (Raggi, D.J.) ("The Supreme Court . . . has long held that a prisoner found guilty on one count of an indictment cannot attack his conviction simply because it appears inconsistent with a finding of not guilty on another count. . . .   Indeed, courts recognize that inconsistent verdicts are often a product of jury lenity, which courts will not review."); Bowden v. Keane, 85 F. Supp. 2d 246, 251 n.6 (S.D.N.Y. 2000) ("'a jury is free to render inconsistent verdicts or to employ relevant evidence in convicting on one count that it may seem to have rejected in acquitting on other counts'"), aff'd, 237 F.3d 125 (2d Cir. 2001); Rust v. Eisenschmidt, 97CV615, 2000 WL 33767757 at *3 (N.D.N.Y. June 8, 2000).

An excessive sentence claim does not provide a basis for habeas relief, because "[n]o federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992).[44]

Justice Richter sentenced Robinson to twenty-five years to life imprisonment for Rivera's murder, consecutive to concurrent fifteen year sentences for the attempted murder and assault of Vazquez. (See page 14 above.) It is undisputed that Robinson's sentence is within the range prescribed by New York law. Robinson was convicted of the class A-I felony of second degree murder, Penal Law § 125.25, and class B felonies of attempted second degree murder and first degree assault, Penal Law §§ 110.05, 120.10. (See page 13 above.) Under New York law, Justice Richter was authorized to impose a maximum term of from twenty-five years to life imprisonment for Robinson's second degree murder conviction. See Penal Law § 70.00(2)(a), (3)(a)(i). Additionally, because Robinson was adjudicated a second violent felony offender pursuant to Penal Law § 70.04 (see page 13 above), Justice Richter was authorized to impose a determinate sentence of fifteen years imprisonment for each class B felony conviction. See Penal Law § 70.04(3)(a). Finally, since Rivera's murder and the attempted murder and assault of Vazquez were not "committed through a single act," Justice Richter was authorized, in her discretion, to run the sentences consecutively. See Penal Law § 70.25(1)-(2).

---

[44]   Accord, e.g., Jackson v. Lee, 10 Civ. 3062, 2010 WL 4628013 at *44 (S.D.N.Y. Nov. 16, 2010) (Peck, M.J.), report & rec. adopted, 2010 WL 5094415 (S.D.N.Y. Dec. 10, 2010); Garcia v. Rivera, 07 Civ. 2535, 2007 WL 2325928 at *17 & n.18 (S.D.N.Y. Aug. 16, 2007) (Peck, M.J.) (& cases cited therein); see, e.g., Thomas v. Senkowski, 968 F. Supp. 953, 956 (S.D.N.Y. 1997) ("It is well established that, when a sentence falls within the range prescribed by state law, the length of the sentence may not be raised as grounds for federal habeas relief."); see also, e.g., Townsend v. Burke, 334 U.S. 736, 741, 68 S. Ct. 1252, 1255 (1948) (severity of sentence generally not reviewable on habeas).

Because Robinson's sentence is within the statutory range, it is not reviewable on habeas corpus by this Court as "excessive."  Accordingly, Robinson's excessive sentence habeas claim should be DENIED.

## CONCLUSION

For the reasons set forth above, Robinson's habeas petition should be DENIED in its entirety.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.[45/]  Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels, 500 Pearl Street, Room 630, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Daniels (with a courtesy copy to my chambers).  Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86 (1994); Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988);

---

[45/]   If the pro se petitioner requires copies of any of the cases reported only in Westlaw, petitioner should request copies from opposing counsel.  See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009); SDNY-EDNY Local Civil Rule 7.1(c)

64

McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

72.

Dated:      New York, New York
            May 17, 2011

                                        Respectfully submitted,

                                        _____
                                        **Andrew J. Peck**
                                        United States Magistrate Judge

Copies to:   Malik Robinson
             Susan Gliner, Esq.
             Judge George B. Daniels

H:\OPIN\ROBINSON-Malik